**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. _____

| | | |
|---|---|---|
| **WOUND CARE CONCEPTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VOHRA HEALTH SERVICES, P.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Wound Care Concepts, Inc. ("WCC"), files this Complaint against Defendant, Vohra Health Services, P.A., d/b/a Vohra Wound Physicians and d/b/a Vohra Wound Services ("Vohra"), seeking damages arising from Vohra's unlawful business practices, including Vohra's leveraging unfair competitive advantages gained by misrepresenting its services and billing practices, and in support, alleges as follows:

### I.   INTRODUCTION

1.   WCC and Vohra are both in the business of providing wound care in nursing homes and other long-term care facilities ("facilities") throughout the United States.  However, each plays a different role in that care.  WCC has built its reputation on supplying wound care products to patients as a Medicare-enrolled supplier of durable medical equipment, prosthetics, orthotics, and supplies ("DMEPOS"), primarily serving patients under the Medicare Part B program.  As a Medicare-enrolled DMEPOS supplier, WCC operates its business in faithful adherence to the regulations imposed by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services ("CMS").  Vohra, on the other hand, is a professional

services corporation providing wound care physician services, touting itself as the "largest wound care specialty group focused on the post-acute market." "About," VOHRA, https://vohrawoundcare.com/about/ (last visited Aug. 16, 2019).

2.     Not long ago, WCC's and Vohra's roles were distinct, not competitive: WCC provided (and today still provides) wound care products, namely surgical wound dressings, to Medicare Part B patients in facilities and billed them directly to Medicare Part B; Vohra provided physician-led wound consultations on-site at facilities. WCC and Vohra have had significant overlap in the facilities (*i.e.*, customers) each serves, working alongside one another to provide items and services to mutual patients.

3.     Vohra has now debuted a new and separate service that directly competes with WCC by supplying wound care products to facilities' patients, called the "Dressing Dispensing Program." Vohra markets this program as a one-stop solution to wound care, offering to manage the ordering and delivery of surgical wound dressings used for wound care, in addition to the physician services Vohra already provides.

4.      In its marketing of the "Dressing Dispensing Program," Vohra holds itself out as a DMEPOS supplier like WCC, when it is not. It misrepresents its ability to provide surgical wound dressings in compliance with Medicare Part B requirements and falsely suggests it is eligible to fulfill the duties of a DMEPOS supplier, even though Vohra is not a Medicare-enrolled DMEPOS supplier. In doing so, it exploits the position of trust its physicians hold as treating practitioners in facilities.

5.     While attempting to enter this market, Vohra has engaged in unlawful and improper practices that violate federal and state laws and regulations and allow Vohra to gain improper competitive advantages, deceptively induce facilities to do business with Vohra, unjustifiably

interfere with WCC's business, and reap ill-gotten profits at the expense of Medicare and lawful competitors like WCC.

6.      Vohra has chosen not to compete lawfully with Medicare-enrolled DMEPOS suppliers like WCC, who properly comply with the broad array of requirements Medicare imposes on DMEPOS suppliers in order to bill and receive payment for DMEPOS items such as surgical wound dressings.   Instead of engaging in legitimate competition, Vohra's business model attempts to tilt the competitive playing field unfairly and unlawfully in its favor by circumventing Medicare requirements as it tries to replace compliant, established suppliers such as WCC in facilities across the country.

7.      In doing so, Vohra actively and implicitly misleads and deceives facilities and facility residents—not to mention Medicare—that its dispensing and billing practices are lawful.

8.      The result is improper and unlawful Medicare billing, dispensing, and reimbursement for wound care products, as well as ill-gotten additional revenues and profits for Vohra, at the expense of the unjustified efforts to interfere with WCC's lawful business and long-standing customer relationships.

## II.   PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Wound Care Concepts, Inc. ("WCC" or "Plaintiff") is a Pennsylvania corporation with its principal place of business in Bristol, Pennsylvania.

10.      Defendant Vohra Health Services, P.A., d/b/a Vohra Wound Physicians and d/b/a Vohra Wound Services ("Vohra" or "Defendant"), is a Florida professional services corporation with its headquarters and principal place of business located at 3601 S.W. 160th Avenue, Suite 250, Miramar, Florida 33027.

11.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this action, as it is alleged that Vohra violated Section 43 of the Lanham Act, 15 U.S.C. § 1125.

12.     Pursuant to 28 U.S.C. § 1332, this Court also has original jurisdiction over this matter because there is complete diversity of citizenship on either side and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     WCC has lost in excess of $75,000.00 of business because of Vohra's unlawful practices in states such as Florida, New York, Texas, Illinois, and North Carolina.

14.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant Vohra resides in this district and has transacted business in this district, and because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

15.     Pursuant to Florida Statutes § 48.193(2), this Court has personal jurisdiction over Vohra, a Florida entity with its headquarters in Florida, because it is engaged in substantial and not isolated activities within this state, namely, marketing and providing wound care services to facilities in Florida.

16.     This Court also has personal jurisdiction over Defendant pursuant to Florida Statutes § 48.193(1) because Plaintiff's causes of action arise out of Defendant's (i) operating, conducting, engaging in, and carrying on business operations within the state; and (ii) committing tortious acts in this state that have caused injuries to WCC.  As described below, Vohra has committed acts constituting unfair and deceptive trade practices, tortious interference with WCC's contracts and business relationships, and deceptive advertising in violation of the laws of various federal and state laws, all with the intent and effect of defrauding Medicare, harming competitors like WCC, and deceiving nursing homes and skilled nursing facilities across the country.

- 4 -

### III.   FACTUAL BACKGROUND

**A.   WCC's Wound Care Business**

17.    For over nine years, WCC has been a Medicare-enrolled DMEPOS supplier of wound care products, serving patients in nursing homes and other long-term care facilities throughout the United States, including Florida.   WCC's primary services are supplying appropriate wound care products and surgical wound dressings to Medicare Part B patients in such facilities and handling the required billing for those products through Medicare Part B.

18.    The majority of the wound care products and surgical wound dressings supplied by WCC are manufactured by Gentell, Inc. ("Gentell").   Although WCC and Gentell are separate companies, WCC is sometimes referred to colloquially as Gentell due to its long-standing provision of Gentell products and due to the fact that WCC and Gentell are corporate affiliates.

19.    As a Medicare-enrolled DMEPOS supplier, WCC must maintain accreditation through a CMS-approved accreditation organization, adhere to regulatory supplier standards, and meet DMEPOS Quality Standards.   42 C.F.R. § 424.57(c); *see also* Final Durable Medical Equipment, Prosthetics, Orthotics, And Supplies (DMEPOS) Quality Standards (effective Jan. 9, 2018), *available at*   https://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/Medicare-FFS-Compliance-Programs/Downloads/Final-DMEPOS-Quality-Standards-Eff-01-09-2018.pdf.   In order to bill services under Medicare Part B, WCC must continually comply with these standards, preserve its accreditation in good standing, and maintain a surety bond, in addition to meeting all other Medicare enrollment and coverage requirements.

20.    WCC prides itself on its commitment to ensuring that its billing strictly conforms to Medicare coverage and billing requirements ("Medicare Guidelines"), which are described

further below.   Facilities turn to WCC for wound supplies because of its conscientious commitment to adhering to supplier standards when providing wound care products.

21.   Since WCC incorporated in 2005, it has grown its business to span the country. WCC currently operates in 49 states and employs approximately 90 people.

22.   WCC attributes its growth to its investment in customer service, its industry reputation as a compliant Medicare Part B DMEPOS supplier, and word of mouth among facilities.

23.   For example, within the last year, WCC was doing business with about 95 facilities in the state of Florida alone.   WCC has recently lost business from several facilities in Florida due to Vohra's deceptive business practices, as described herein.

24.   WCC's business relies on contracting with facilities to provide wound care products to the facilities' patients, where those wound care products have been prescribed by a health care provider.

25.   WCC supplies Part B-covered items to the facility's residents covered by Medicare Part B, pursuant to a physician order.

26.   Prior to about June 2018, WCC was aware that Vohra was operating a physician-led wound care specialty group providing physician's professional services.   Vohra's services were provided in the same types of facilities that are WCC's customers, but Vohra was not competitive with WCC.   Rather, a Vohra physician, like any other physician, would dictate a patient's wound care treatment and prescribe wound care products to accomplish that treatment, and WCC would supply the prescribed products to the patient.   WCC and Vohra's customers have overlapped in the past because they both provide services related to wound treatment to facilities.   However, in the past, to the extent that a facility had contracted with WCC to provide

supplies and with Vohra to provide physician care, WCC's and Vohra's services were not in competition.

27.    Beginning around June 2018, WCC learned that Vohra and Vohra physicians were marketing a new wound care supply service that directly competes with WCC's services although Vohra, and upon information and belief its physicians, are not enrolled as Medicare DMEPOS suppliers.

28.    Over the last year, numerous facilities have ended their contractual relationships with WCC as a result of Vohra's unlawful and dishonest business practices, as Vohra solicits these facilities under the false pretense that it can provide these services in compliance with applicable law, regulation and Medicare requirements. Despite WCC's efforts to put Vohra on notice that its practices violate Medicare laws and requirements, Vohra has continued to expand its Dressing Dispensing Program, knowingly and unjustly harming WCC's business and its ability to compete to lawfully serve facilities.

**B.  Vohra's Business**

29.    According to Vohra's website, Vohra operates a national physician group that provides on-site wound care and wound care management to nursing homes, assisted living facilities, and rehabilitation facilities.  Vohra has around 250 physicians treating patients across 27 states and works with over 2,500 skilled nursing facilities, including many in Florida. "Clinical    Services:    Services    for    Skilled    Nursing    Facilities,"    VOHRA, https://vohrawoundcare.com/clinical-services/services-for-skilled-nursing-facilities/our-services/ (last visited Aug. 16, 2019).

30.     Upon information and belief, Vohra's physician services do not represent an expense to the facilities and are not reimbursable to the facilities, but are billed directly to Medicare by Vohra.

31.     While Vohra's physicians have provided professional services in the nature of on-site consultation and treatment of wounds, until recently, they did not supply the surgical wound dressings that would be applied in the treatment of those wounds.

32.     Upon information and belief, Vohra may be enrolled with Medicare as a physician group.  Regardless, enrollment as a physician group is distinct from enrollment as a DMEPOS supplier.

33.     Unlike WCC, Vohra is not enrolled with Medicare as a DMEPOS supplier.  A review of the Medicare DMEPOS supplier directory data shows no enrolled supplier under the name "Vohra" or at the address identified as Vohra's principal place of business. "Data.Medicare.gov," CENTERS FOR MEDICARE & MEDICAID SERVICES, https://data.medicare.gov/Supplier-Directory/Supplier-Directory-Data/ct36-nrcq/data (last visited Aug. 16, 2019).  Upon information and belief, Vohra's employed physicians are also not enrolled as DMEPOS suppliers.  Therefore, Vohra and its physicians are not authorized to bill Medicare for surgical wound dressings as a DMEPOS supplier and cannot use the same billing procedures as an enrolled DMEPOS supplier like WCC.

34.     Beginning in around June 2018, WCC learned that Vohra had begun promoting a new service, the Dressing Dispensing Program, to its existing and new customer facilities as an additional service, separate from its physician services.

35.     While Vohra is not an enrolled DMEPOS supplier, WCC has learned that Vohra, in an effort to convert WCC customers and to gain contracts with new facilities or expand the scope

of its services with facilities, is offering to have its treating physicians supply wound care products to patients in facilities and, upon information and belief, improperly bill for those products "incident to" the physician care.  In addition, Vohra is representing to facilities that it is in fact a Medicare-enrolled DMEPOS supplier, claiming to be subject to the federal regulatory standards for enrolled DMEPOS suppliers.

36.    Unbeknownst to the facilities, Vohra's statements about its role as a Medicare-enrolled DMEPOS supplier are false and misleading, and its business model and billing practices in this regard contravene Medicare Guidelines.

37.    Vohra capitalizes on the position of trust held by its physicians to promote its unlawful or deceptive supplying of surgical wound dressings.

38.    Under the Dressing Dispensing Program, Vohra offers to fill the role of both ordering physician and supplier for a facility's Medicare Part B patients, by ordering, dispensing and billing wound dressings, though Vohra is not enrolled as a DMEPOS supplier or authorized to dispense or bill items as such a supplier.

39.    Upon information and belief, Vohra improperly ships the wound care products it provides through the Dressing Dispensing Program to facilities to be dispensed and administered by facility staff.  On its website, Vohra represents that its "dressing program ensures the dressings recommended and ordered by our physician are delivered to the patient within 24-48 hours of the physician's visit."

40.    Clearly contemplating that the Dressing Dispensing Program will be in direct competition with a facility's existing supplier relationship, FAQs posted on Vohra's website assure facilities that "Vohra is not replacing your current durable medical equipment provider, and we do not supply any products, except for primary and secondary dressings."  "Clinical

Services: Dressing Dispensing Program, FAQ," VOHRA, https://vohrawoundcare.com/clinical-services/dressing-dispensing-program/faq/ (last visited Aug. 16, 2019).

41.   Vohra has acknowledged that Vohra's Dressing Dispensing Program directly competes with WCC's business.

**C.   Medicare Part B Coverage for Covered Wound Care Products**

**i.   *Covered Services Generally***

42.   Generally, Medicare Part B covers healthcare items and services that (1) are eligible for a defined Medicare benefit category, (2) are reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and (3) meet all other applicable Medicare statutory and regulatory requirements. *See* 42 U.S.C. §§ 1395k, 1395l, 1395y(a)(1)(A).

43.   Medicare Part B makes payment for surgical wound dressings (wound care supplies) provided to a patient in a facility when the patient's stay is not covered under Medicare Part A.   When a facility patient is in a covered Part A stay, the facility is responsible for providing surgical wound dressings, either itself or under arrangements, and the cost of these items are bundled into the facility's per diem payment for the patient.   42 U.S.C. § 1395yy(e)(1).

44.   When a patient's stay is not covered under Medicare Part A, some medically necessary items and services can be provided and paid under Medicare Part B.   Medicare Claims Processing Manual, Ch. 7, § 10.1.   Surgical wound dressings are among the items that are payable under Part B under these circumstances.   *Id.*

45.   Medicare coverage for any particular product or service, such as a type of surgical wound dressing, is determined by statute and CMS regulations; CMS manual guidance including national coverage decisions, which outline the conditions under which an item or service is

covered; and Local Coverage Determination ("LCD") guidance by Medicare contractors (called Medicare Administrative Contractors ("MACs"), which process claims for Medicare and make determinations as to whether payment should be made.

46.    The purpose of LCDs is to provide information regarding what Medicare considers "reasonable and necessary," as well as outlining other payment rules and requirements that must be satisfied to obtain Medicare reimbursement.  For example, an LCD for Surgical Dressings (L33831) outlines the types of wounds that qualify, the types of surgical wound dressings that qualify, and additional requirements and restrictions for coverage.

47.    Medicare covers surgical wound dressings under the surgical dressings benefit.  42 U.S.C. § 1395k, 1395x(s)(5).

48.    Surgical wound dressings are considered medical supplies for purposes of Medicare Part B coverage, and are typically reimbursed in accordance with the DMEPOS fee schedule.  42 C.F.R. § 410.36(a)(1); Medicare Claims Processing Manual, Ch. 20, § 30.

49.    Surgical wound dressings are generally billed to Medicare Part B when provided by a Medicare-enrolled DMEPOS supplier to a Medicare Part B-covered patient.  42 C.F.R. § 424.57(b).

50.    Some services and supplies may qualify to be billed "incident to" if they are "commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills." 42 U.S.C. § 1395x(s)(2)(A). Federal regulations specify the requirements that must be met in order to be billed to Medicare Part B as "incident to" a physician's services.  42 C.F.R. § 410.26.

51.    In order to be billed as "incident to," the following requirements must all be met:

(1) Services and supplies must be furnished in a non-institutional setting to non-institutional patients.

- 11 -

(2) Services and supplies must be an integral, though incidental, part of the service of a physician (or other practitioner) in the course of diagnosis or treatment of an injury or illness.

(3) Services and supplies must be commonly furnished without charge or included in the bill of a physician (or other practitioner).

(4) Services and supplies must be of a type that are commonly furnished in the office or clinic of a physician (or other practitioner).

(5) In general, services and supplies must be furnished under the direct supervision of the physician (or other practitioner). Designated care management services can be furnished under general supervision of the physician (or other practitioner) when these services or supplies are provided incident to the services of a physician (or other practitioner). . . .

(6) Services and supplies must be furnished by the physician, practitioner with an incident to benefit, or auxiliary personnel.

42 C.F.R. § 410.26(b).

52.     The Vohra Dressing Dispensing Program does not meet these requirements for "incident to" billing.

53.     Submission of bills seeking reimbursement from Medicare for non-covered services or products, or billing for services or products provided in a manner that is not in compliance with Medicare billing and coverage requirements, is improper and unlawful.

### ii.     *Requirements for Enrolled DMEPOS Suppliers*

54.     42 C.F.R. § 424.57 is entitled "*Special payment rules for items furnished by DMEPOS suppliers and issuance of DMEPOS supplier billing privileges*." The regulation sets forth the conditions a DMEPOS supplier must meet in order to be eligible to receive payment for a Medicare-covered item "on or after the date CMS issued to the supplier a DMEPOS supplier number conveying billing privileges." *See* 42 C.F.R. § 424.57(b).

55.     The regulation specifically defines "DMEPOS supplier" to mean "an entity or individual, including a physician or a Part A provider, which sells or rents Part B covered items

- 12 -

to Medicare beneficiaries and which meets the standards in paragraphs (c) and (d) of this section." *See* 42 C.F.R. § 424.57(a).

56.    Paragraph (c) contains the requirements a supplier must meet in order to certify its application for billing privileges as a DMEPOS supplier. *See* 42 C.F.R. § 424.57(c).

57.    Once a supplier meets these numerous requirements, applies to CMS, and becomes approved as a DMEPOS supplier, the supplier is issued a DMEPOS supplier number, obtains Medicare billing privileges and must operate subject to 42 C.F.R. § 424.57 while it holds such billing privileges.

58.    Only DMEPOS suppliers, as that term is defined therein, are subject to 42 C.F.R. § 424.57.

59.    As of the date of this filing, and upon information and belief at all times relevant hereto, Vohra is not a Medicare-enrolled DMEPOS supplier.

60.    Vohra is exploiting an unfair competitive advantage both by marketing and by operating its Dressing Dispensing Program in contravention of the Medicare Guidelines.

**D.   Vohra Mispresents Itself As An Enrolled DMEPOS Supplier or Capable of Performing the Same Function As An Enrolled DMEPOS Supplier**

   *i.    Vohra deceptively markets itself as an enrolled DMEPOS supplier*

61.    Vohra has made multiple assertions misrepresenting its ability to act as a Medicare DMEPOS supplier, although it is not enrolled as such and has not met the DMEPOS regulatory supplier standards or other applicable requirements.

62.    Vohra's marketing of the Dressing Dispensing Program uses misleading representations, implicit misrepresentations, and material omissions to induce facilities to participate in the Program.

63.    Since at least June 2018, Vohra has been soliciting facilities for its Dressing Dispensing Program through its website, by mail, by email, and in person, including facilities that Vohra knows are WCC customers.

*Website Misrepresentations*

64.    Vohra's website represents that the Dressing Dispensing Program "combines the expertise of our bedside physicians with the order and delivery of the exact dressings they determine are medically necessary."  "Clinical Services: Dressing Dispensing Program, How It Works,"    VOHRA,    https://vohrawoundcare.com/clinical-services/dressing-dispensing-program/how-it-works/ (last visited Aug. 16, 2019).  It further states that the Program "ensures the dressings recommended and ordered by our physician are delivered to the patient within 24-48 hours of the physician's visit." *Id.*

65.    Vohra's website adds, "[a]s a participating enrolled Medicare provider, Vohra bills the resident's insurance directly for these dressings at no cost to the facility."  "Clinical Services: Dressing Dispensing Program, FAQ," VOHRA, https://vohrawoundcare.com/clinical-services/dressing-dispensing-program/faq/ (last visited Aug. 16, 2019).

66.    It attempts to distinguish itself over supply companies like WCC by adding, "[t]here are no third parties involved chasing you for records or signatures." "Clinical Services: Dressing Dispensing Program, The Benefits," VOHRA, https://vohrawoundcare.com/clinical-services/dressing-dispensing-program/the-benefits/ (last visited Aug. 16, 2019).

*Mail and Email Misrepresentations*

67.    Vohra has also directly marketed to facilities that are current customers of WCC.

68.    For example, on June 21, 2018, Vohra sent a letter to one of WCC's customers, Bria Healthcare Services of Geneva in Geneva, Illinois, with a customized advertising for its

Dressing Dispensing Program (the "Letter Advertisement"). A copy of the Letter Advertisement is attached in Composite Exhibit "A" hereto.

69. The Letter Advertisement was sent under the name of the Vohra physician who was serving that particular facility. It states, in part: "Today, the Vohra physician who treats your patients at bedside is offering to coordinate the delivery of the surgical wound dressings that your residents need. . . . Vohra dispenses the dressings; your current third party supplier continues to provide all your other Part B supplies." The explanation of Vohra's service promises that "[p]atients receive their wound treatments usually *within 48 hours* . . . ." *See* Comp. Ex. "A" at 1 (emphasis added).

70. Vohra's marketing to Bria also includes a "Questions & Answers" handout, which represents that "Vohra will dispense dressings for qualified Medicare Part B (non-skilled) patients," and "[a]s a participating Medicare Part B provider, Vohra bills the resident's insurance directly." It further states, "Vohra is not replacing your current durable medical equipment provider, and we will not supply any products, *except for primary and secondary dressings*." *See* Comp. Ex. "A" at 2 (emphasis added).

71. On or around June 28, 2018, Vohra sent an email advertising its Dressing Dispensing Program to facilities (the "Email Advertisement"), at least eight of which were current WCC customers, including Advanced Rehab & Health Care of Live Oak in San Antonio, Texas. Vohra's representations in the Email Advertisement are largely identical to those in the Letter Advertisement.

72. These advertisements contain false and misleading representations and/or omit material facts in several respects:

a. Most critically, Vohra's statement that it is a "participating Medicare Part B provider" is misleading in this context because it suggests that its status as an enrolled physician group allows it to lawfully supply wound care supplies as advertised.  In fact, Vohra would have to be an enrolled ***DMEPOS supplier*** to provide these supplies under the circumstances — **which it is not**.

b. Vohra also misleadingly suggests that it does not replace the facility's current DMEPOS suppliers; however, the Dressing Dispensing Program does provide the same services as WCC and therefore intends to replace, and indeed has, replaced WCC as the facilities' DMEPOS supplier of wound care dressings.  After all, WCC's service is to provide primary and secondary wound dressings.

c. The practice Vohra describes necessarily involves improper billing for Medicare Part B. Vohra implies in these advertisements that this Program operates lawfully, and omits that the billing practice runs contrary to Medicare Guidelines.  Conspicuously, these advertisements say nothing about the physician applying or supervising the application of the dressings during a patient visit; instead, it indicates that while the Vohra physician places the order for the dressings upon visiting a patient, the dressings are *received and applied hours or days later by someone other than the physician*.

<u>*In-Person Misrepresentations*</u>

73.    Upon information and belief, Vohra physicians have made misrepresentations and misleading statements to facility administrators to convince them that Vohra, and not any other company, must supply the products prescribed by Vohra physicians.

74.    Facility Administrators and Directors of Nursing, who are generally the decision-makers as to contracts for wound care supplies, have reported to WCC that Vohra physicians

- 16 -

have told them that Vohra must also now supply the dressings being used on their patients.  For example, in or around August 2018, a Vohra physician told the administrator at New Carlton Nursing Home and Rehab in Brooklyn, New York, that Vohra had to supply the products prescribed by the Vohra physician.  New Carlton terminated its business with WCC in favor of Vohra.

75.    Such statements, which often were made by Vohra when the facility had an existing and ongoing contract with WCC, are patently false and exploitive of the position of trust its physicians hold as treating practitioners in facilities.

76.    Similarly, in March 2019, a Vohra physician told nurses at the Concordia Nursing and Rehabilitation facility in Henderson, North Carolina that in order to use the Vohra physician services they have to order the supplies from Vohra, and if it did not, then the facility would have to cancel its Vohra contract.  This statement was also misleading in that the Dressing Dispensing Program is a separate and distinct service from Vohra's physicians services, as made clear by the separate treatment of these services on Vohra's website, and that Vohra, upon information and belief, requires facilities who already use its physician services to sign an amended contract in order to participate in its Dressing Dispensing Program.

*Misrepresentations made as part of its Dressing Dispensing Program shipments*

77.    Significantly, Vohra ships the surgical wound dressings to facilities for individual patients by separate packages that each contains a packing slip reflecting the items delivered (the "Packing Slips").  Vohra uses a standard form for its Packing Slips.  An example of the Packing Slips, with only personally identified information ("PII") redacted, is attached as Exhibit "B" hereto.

78.    The bottom portion of the Packing Slips contains, in relevant part, the following representation:

> **The products and/or services provided to you by Vohra Wound Physicians are subject to the supplier standards contained in the Federal regulations shown at 42 Code of Federal Regulations Section 424.57(c).** These standards concern business professional and operational matters (e.g., honoring warranties and hours of operation).

Ex. "B" (emphasis added).

79.    Vohra is not a "supplier" within the meaning set forth in 42 C.F.R. § 424.57(c), which regulation *pertains only to enrolled DMEPOS suppliers*.

80.    Vohra is not an enrolled DMEPOS supplier.  The Medicare DMEPOS supplier directory data shows no enrolled supplier under the name "Vohra," Vohra Health Services, P.A., Vohra Wound Physicians, or Vohra Wound Services, or at the address identified as Vohra's principal place of business.   "Data.Medicare.gov," CENTERS FOR MEDICARE & MEDICAID SERVICES,  https://data.medicare.gov/Supplier-Directory/Supplier-Directory-Data/ct36-nrcq/data, (last visited Aug. 16, 2019).  Upon information and belief, Vohra's employed physicians are also not enrolled as DMEPOS suppliers.

81.    Because Vohra is *not* an approved Medicare DMEPOS supplier, it is thus *not* "subject to the supplier standards contained in [42 C.F.R. § 424.57(c)]."  As stated, Vohra's representation to its customers is deceptive and literally false, or false by necessary implication because it necessarily implies that Vohra is an enrolled DMEPOS supplier.

82.    In communications with WCC, Vohra's founder, president, and vice president have each indicated that Vohra's Dressing Dispensing Program is billing for wound care products under their physicians' Medicare enrollment, and not a DMEPOS supplier enrollment.

**E.   Vohra's Dressing Dispensing Program Violates Medicare Billing Regulations**

83.   Vohra's billing practices for its Dressing Dispensing Program violate Medicare regulations and are thus unlawful, yet Vohra represents, both directly and by necessary implication, that its supplies are covered by insurance and that its Program is operated lawfully.

84.   As part of its Dressing Dispensing Program, Vohra physicians are prescribing, ordering, billing for, and dispensing wound dressings.

85.   Vohra's website explicitly states, in describing the benefits of the Dressing Dispensing Program, that "these are dressings covered by insurance" and "as a participating enrolled Medicare provider, Vohra bills the resident's insurance directly for these dressings." Because neither Vohra nor its physicians are enrolled DMEPOS suppliers, Vohra cannot bill surgical wound dressings as an enrolled DMEPOS supplier.

86.   Alternatively, upon information and belief, Vohra's Dressing Dispensing Program is billing for wound care products under their physicians' Medicare practice enrollment, and in order to do so, Vohra is billing for the supplies as "incident to" its physician services.

87.   The Healthcare Common Procedure Coding System (HCPCS) is a collection of codes that identify procedures, supplies, products and services for purposes of billing Medicare. Upon information and belief, under Vohra's Dressing Dispensing Program, Vohra bills for wound care products with the following HCPCS codes: A6196–A6199, A6010, A6011, A6021– A6024, and A6209–A6215.   These are classified as "surgical dressings" for purposes of Medicare coverage.

88.   Vohra's use of "incident to" billing for its Dressing Dispensing Program is unlawful because the provision of the surgical wound dressings does not meet the "incident to" requirements set forth in 42 C.F.R. § 410.26(b).   Specifically, among other issues, the products

provided by Vohra are not incidental, are furnished in institutional settings, are not furnished by the physician or by eligible auxiliary personnel, and are not applied under physician's direct supervision, within the meaning of those requirements as ascribed by Medicare regulations and guidance.

**F.   Vohra's Unlawful Practices Create an Unfair Competitive Advantage**

89.   Vohra's misrepresentations about its Dressing Dispensing Program concomitantly promote a service and convey the message that such service is legal for the facilities and patients to use.

90.   Vohra's misrepresentation of its status as a DMEPOS supplier or its ability to provide services in place of a properly enrolled Medicare DMEPOS supplier violates Medicare regulations and guidance.  These are material representations that are either false, or necessarily imply falsely, that Vohra is a Medicare-enrolled DMEPOS supplier and abides by Medicare billing regulations and guidelines.

91.   Vohra makes deceptive misrepresentation on its Packing Slips with the intent to induce the recipients or customers of its Dressing Dispensing Program services to believe that Vohra is an enrolled DMEPOS supplier, is operating in accordance with Medicare regulations, and that its service operates lawfully, and accordingly, to continue using Vohra's Dressing Dispensing Program rather than WCC or other enrolled DMEPOS suppliers.

92.   Similarly, to the extent Vohra is billing Medicare Part B for supplies "incident to" physician services without meeting the requirements imposed by the Medicare regulations, it is improperly submitting claims in violation of Medicare laws and requirements.

93.    Vohra relies on these unlawful billing practices to "dispense and facilitate delivery of the appropriate dressings directly to the patient," as it agrees to do in its agreement with facilities participating in the Dressing Dispensing Program.

94.    These misrepresentations are material to customers.   Vohra's customers have chosen Vohra with the mistaken belief that Vohra's Dressing Dispensing Service was lawful conduct undertaken in accordance with Medicare regulations.   Facilities were persuaded to choose or retain Vohra based on the deceptive implication that Vohra operated the Dressing Dispensing Program in accordance with Medicare regulations.

95.    Upon information and belief, the facilities believe Vohra's representations implicitly conveyed the legality of the Dressing Dispensing Program.

96.    Vohra's use of these unlawful billing practices, along with its physician's unique position as a treating professional to facility patients, creates an unfair competitive advantage by misrepresenting to facilities that Vohra can more efficiently provide wound care supplies to the facility's patients, directly from the prescribing physician.

97.    Vohra's use of these unlawful billing practices wrongfully induces facilities to do business with it instead of WCC or any other competitor who faithfully abides by Medicare billing regulations and guidelines.

**G.   Vohra, Through its Physicians, Knowingly Interferes with WCC's Relationships with Facilities**

98.    Vohra is also unjustifiably interfering and unfairly competing with WCC by supplying products to patients at facilities already under contract with WCC and impeding WCC from delivering products under existing contracts with facilities.

99.    Vohra is attempting to interject itself as a supplier by delivering wound care products to facility patients who are already being served by WCC.

- 21 -

100. On multiple occasions, Vohra physicians have simply ordered, without the knowledge, consent, or desire of the facility or patient, additional surgical wound dressing supplies for a patient that WCC was already serving in willful disregard of WCC's contractual relationship with the facility and existing relationship with the facility and the patient. Vohra has refused to return such supplies even upon demand by WCC.

101. The Vohra physician knew that WCC was providing wound care supplies to a certain facility's patients, or alternatively should have known of WCC's existing supplier relationship with the facility, as it would be readily evident to on-site providers that WCC was providing the wound dressings to the facility's patients. In fact, in those instances, Vohra's physician had been working closely with WCC to order the correct dressings.

102. Vohra also unlawfully misrepresented that participation in the Dressing Dispensing Program is required to maintain services from Vohra's physicians, exploiting the facilities' existing relationships with Vohra physicians and need for wound care physician services in order to take customers from WCC.

103. Vohra willfully and unjustifiably interjected itself as the wound care supplier in order to market its new services.

**H.  Vohra Improperly Incentivizes Physicians to Solicit Business for Dressing Dispensing Program**

104. Upon information and belief, Vohra offers its physicians monetary bonuses for each facility the physician persuades to place supply orders through Vohra's Dressing Dispensing Program. Vohra's financial arrangements with its physicians may therefore violate both the Federal and Florida anti-kickback laws.

105.  The Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits persons from offering, paying, soliciting or receiving any remuneration that is intended to induce referrals, purchases, or orders of items or services reimbursed by a federal health care program.

106.  Florida's Anti-Kickback Statute, Florida Statutes § 456.054, makes it "unlawful for any health care provider or any provider of health care services to offer, pay, solicit or receive a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients."  Physicians and other health care providers who violate Florida's Anti-Kickback Statute can face administrative penalties (*e.g.*, administrative sanctions and possible loss of licensure) as well as criminal penalties.

107.  The Florida Patient Brokering Act, Florida Statutes § 817.505, makes it a crime for any health care provider or health care facility to "[o]ffer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in case or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility."

108.  The obvious purpose of such payments is to increase referrals by whatever means necessary, including but not limited to interfering with WCC's relationships with its customers, thereby increasing Vohra's revenues derived from the Dressing Dispensing Program's unlawful billing practices.

109.  Upon information and belief, the facilities targeted by Vohra for its Dressing Dispensing Program do not have any knowledge or involvement in Vohra's kickbacks to its physicians.  Facilities have been deceptively induced into participating in the Dressing Dispensing Program.

## I.   WCC Put Vohra on Notice of Its Unlawful Practices

110.   On numerous occasions, WCC brought its concerns about the legality of Vohra's business model and Medicare billing practices to Vohra's attention and specifically requested that Vohra not interfere with WCC's contractual relations, to no avail.

111.   WCC has communicated these concerns to Vohra's founder, president, and/or vice president on multiple occasions over the last year.  Despite the fair and frank warnings, Vohra has refused to cease its unlawful conduct.

112.   Vohra knows, or reasonably should know, that its Dressing Dispensing Program relies on billing practices that are in violation of Medicare Guidelines and subject to civil and criminal penalties under federal and state laws.

113.   Vohra's continued marketing and operation of the Dressing Dispensing Program using its current billing practices is deliberate and willful.

## J.   Vohra's Unlawful Business Practices Unjustly Damage WCC

114.   Vohra's unlawful practices that make its Dressing Dispensing Program attractive to facilities are essential to its business model to unlawfully thwart open and fair competition and have damaged WCC and others.

115.   WCC has lost business to Vohra because Vohra offers to combine its existing physician consultation services with the new service of ordering wound care supplies.

116.   Upon information and belief, the facilities that do business with Vohra have no knowledge that Vohra is engaging in wrongful billing practices, violating requirements in its submission of claims to Medicare, and abusing the Medicare system.

117.   Vohra has interfered with and caused WCC to suffer loss of business at the following locations, among others:

a. Kathleen Daniel Nursing and Rehabilitation in Massachusetts, which terminated its contract with WCC in July 2019.

b. The Loft Rehabilitation in Normal, Illinois, which terminated its contract with WCC on or about July 2019.

c. Willow Crest Nursing Pavilion in Sandwich, Illinois, which terminated its contract with WCC on or about July 2019.

d. Kennedy Health and Rehab in Lufkin, Texas, which terminated its contract with WCC in or around June 2019.

e. Aldersgate Healthcare, Inc. d/b/a Susanna Wesley Health Center in Hialeah, Florida, which terminated its contract with WCC in or around May 2019.

f. Hialeah Enterprise, LLC d/b/a Hialeah Shores Nursing and Rehab Center in Miami, Florida, which terminated its contract with WCC in or around May 2019.

g. Miami Shores Nursing and Rehab Center in Miami, Florida, which terminated its contract with WCC in or around May 2019.

h. Cayuga Ridge in Ithaca, New York, which terminated its contract with WCC in April 2019.  The facility received products from Vohra and its Director of Nursing informed the WCC nurse that its Vohra physician was now supplying its wound care products.  WCC requested the facility administrator to return those products to Vohra. WCC reached out to the Vohra physician who denied knowledge of Vohra's shipment. Shortly thereafter, the facility terminated its contract with WCC.

i. Ottawa Pavilion in Ottawa, Illinois, which terminated its contract with WCC on or about March 2019.

j. Crestview Healthcare Residence in Waco, Texas, which terminated its contract with WCC in or around February 2019.

k. Brookview at Menno Haven in Chambersburg, Pennsylvania, which terminated its contract in January 2019, upon its Assistant Director of Nursing telling WCC that "t[h]e dressing products through [Vohra's] program will be processed weekly and delivery turnaround time is 24-48 hours."

l. Alexandria Place in Gastonia, North Carolina, which terminated its contract with WCC on or about December 2018.

m. Palmyra Health and Rehabilitation in Palmyra, Tennessee, which terminated its contract with WCC in December 2018.

n. Greene Meadows Nursing and Rehabilitation Center in Catskill, New York, which stopped doing business with WCC in November 2018 after notifying WCC by email that "[Vohra] has its own wound care supplies and because of this we will be getting our supplies from [Vohra]."  Green Meadows formally terminated its contract as of December 10, 2018, expressly in favor of Vohra.

o. Timberlyn Heights Rehabilitation and Care Center in Great Barrington, Massachusetts, which terminated its contract with WCC in the fall of 2018.  While WCC was the facility's supplier, a Vohra physician solicited the Director of Nursing to use Vohra to supply their wound care products, leading to the facility's termination of WCC shortly thereafter.

p. New Carlton Rehab & Nursing Center in Brooklyn, New York, which WCC lost as a customer facility around August 2018 to Vohra's Dressing Dispensing Program, where Vohra's administrator relayed to the WCC nurse that the Vohra doctor said he "had to" supply their wound dressings.

q. Hilaire Rehab & Nursing in Huntington, New York, which stopped doing business under its contract with WCC in the summer of 2018, and whose Director of Nursing at the time told WCC that she was persuaded to switch because Vohra physicians "just order the products during their weekly visit and it arrives soon after."

118.  WCC reasonably anticipates continuing to lose business due to Vohra's ongoing unfair business practices.

119.  As a result of Vohra's unfair competition practices, Vohra also has inappropriately and unlawfully received substantial business and referrals to provide wound care supplies that they otherwise would not have received.

120.  WCC has suffered damages in the form of terminated contracts, decreased business volume, and loss of referrals and other business opportunities because of Vohra's improper activities.

121.  WCC is also suffering from harm to its reputation and loss of goodwill that it has built up through a great deal of diligence, effort, and investment.  The competitive advantage that Vohra unjustly reaps through improper billing enables Vohra to deceptively portray WCC's services as inefficient, redundant, and unnecessary.

## CLAIMS FOR RELIEF

### Count I — Tortious Interference with Contractual Relations

122.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

123.   This is a claim for relief for tortious interference with contractual relations under Florida common law.

124.   WCC has contracts with many facilities, works diligently to maintain those contractual relationships, and is constantly working to establish contractual relationships with new facilities.

125.   Vohra was and is aware of WCC's contractual relationships with these facilities.

126.   Vohra has interfered with the relationships between WCC and its current facilities by offering them services through its Dressing Dispensing Program that are, unbeknownst to the facilities, in violation of Medicare Guidelines.

127.   Vohra's actions are improper, intentional, malicious, unjustified, and made with the purpose of inducing facilities to terminate or not to continue their respective contractual relationships with WCC.

128.   Vohra is aware that these facilities and WCC are, or were, likely to do business with each other in the future, and that WCC anticipates, or anticipated, receiving continued business from these facilities.

129.   As a direct result of Vohra's unjustified interference with WCC's contractual relations, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count II — Tortious Interference with Business Relationships

130.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

131.   This is a claim for relief for tortious interference with business relationships under Florida common law.

132.   WCC has business relationships with many facilities and is constantly working to maintain those relationships and to establish relationships with new facilities.

133.   Vohra is aware of WCC's ongoing and prospective business relationships with these facilities.

134.   Vohra has interfered with the relationships between WCC and its current and prospective customers by offering services through its Dressing Dispensing Program that are, unbeknownst to the facilities, in violation of Medicare Guidelines.

135.   Vohra's actions are improper, intentional, malicious, unjustified, and made with the purpose of inducing facilities not to enter into or continue a business relationship with WCC.

136.   Vohra is aware that these facilities and WCC are, or were, likely to do business with each other in the future, and that WCC anticipates, or anticipated, receiving continued business from these facilities.

137.   As a direct result of Vohra's unjustified interference with WCC's business relationships, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count III — False Advertising in Violation of Lanham Act

138.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

139.   This is a claim for relief for violation of the Lanham Act's prohibitions on false advertising pursuant to 15 U.S.C. § 1125(a).

140.   Vohra's advertising claims implicitly conveying the legality of their services and Medicare billing arrangements are false and misleading, or false by necessary implication, commercial speech in violation of Section 43(a) the Lanham Act.

141.   Vohra's false, misleading, and implicitly false representations are made in commercial advertisements and promotions to current and prospective facility customers about the lawfulness of Vohra's services and billing practices.

142.   Vohra's false, misleading, and implicitly false advertising statements are likely to deceive facilities about the lawfulness of Vohra's services and billing practices.

143.   Vohra's false, misleading, and implicitly false advertising statements are made knowingly and recklessly to influence, and in fact have influenced, the decisions of facilities as to who will supply wound care products to their patients.

144.   Vohra's Dressing Dispensing Program is offered, advertised, promoted, and sold to facilities in multiple states across the country, including Florida, and thus impacts interstate commerce.

145.   As a direct and proximate cause of Vohra's false, misleading, and implicitly false advertising, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

**Count IV — Violation of Florida Deceptive and Unfair Trade Practices Act**

146.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

147.   This is a claim for relief for violation of the Florida Deceptive and Unfair Trade Practices Act pursuant to Florida Statutes § 501.201 *et seq.* WCC has engaged in numerous deceptive acts and unfair practices by knowingly offering facilities Dressing Dispensing Program services that improperly and unlawfully bill and seek reimbursement from Medicare Part B and that Vohra knows or reasonably should know violate Medicare Guidelines.

148.   Vohra's actions are deceptive and unfair to facilities as well as Vohra's competitors, including WCC.  Vohra's actions constitute deceptive trade practices under Florida Statutes §§ 501.201-501.213.

149.   WCC put Vohra on notice of its deceptive business practices at issue and the harms that Vohra has caused WCC.

150.   As a direct and proximate cause of Vohra's actions, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

**Count V — Misleading Advertising**

151.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

152.   This is a claim for relief for misleading advertising under Florida Statutes § 817.41.

153.   Vohra has made false, misleading, or implicitly false statements of material fact in soliciting business from facilities that likely deceived the facilities when they made decisions as to which company will supply wound care products to their patients.

154.   Vohra knew or should have known that its implied representations regarding the legality of the Dressing Dispensing Program are false, misleading, or implicitly false, and that their business model relies on billing Medicare Part B for services that violate the Medicare Guidelines and therefore cannot be properly billed to Medicare.

155.   Vohra knew or should have known that its implied misrepresentations regarding the legality of the Dressing Dispensing Program would cause harm to its competitors by unfairly inducing customers to do business with Vohra rather than WCC or any other wound care supplier.

156.   Vohra's statements are intended to induce, have already induced, and will continue to induce, facilities to choose Vohra's services over those services offered by WCC because of the unfair competitive advantage gained by Vohra's unlawful billing practices.  Facilities have unknowingly and reasonably relied on Vohra's false, misleading, or implicitly false statements when making decisions as to which company will supply wound care products to their patients.

157.   As a direct and proximate cause of Vohra's actions, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

## Count VI — Unfair Competition

158.   WCC realleges and incorporates the preceding paragraphs 1 through 121 as if fully set forth herein.

159.  This is a claim for relief for unfair competition under Florida common law.

160.  Vohra's Dressing Dispensing Program services involve improperly billing Medicare Part B in violation of Medicare Guidelines, and unfairly put WCC, as an honest law-abiding competitor, at a significant competitive disadvantage.

161.  Vohra's conduct is contrary to honest practice in commercial matters, and its conduct is likely to confuse or deceive the public.

162.  As a result of Vohra's illegal actions and their representations to facilities that such actions are legal, Vohra has confused facilities and have substantially hurt WCC's ability to compete, as a law-abiding provider, in the wound care supply market.

163.  Vohra's actions are willful, malicious, deceptive, and fraudulent.

164.  As a direct and proximate result of Vohra's unfair business practices, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, Wound Care Concepts, Inc., prays for judgment against Defendant Vohra Health Services, d/b/a Vohra Wound Physicians and d/b/a Vohra Wound Services, as follows:

> (a) A permanent injunction prohibiting Vohra, or its employees, independent
>
>> contractors, representatives, or agents, from:
>>
>>> i.  Representing, directly or indirectly, that (1) Vohra is an enrolled
>>>
>>> DMEPOS supplier, (2) Vohra can provide supplies in the same manner as

an enrolled DMEPOS supplier, or (3) Vohra is subject to the standards in 42 C.F.R. § 424.57; and

ii. Shipping or delivering wound care supplies to facilities, or patients within those facilities, that have an existing contract with WCC.

(b) Actual damages in an amount according to proof at trial, including, but not limited to, WCC's lost business and Vohra's ill-gotten and unjustly derived revenues;

(c) An accounting by Vohra of all payments received from its Dressing Dispensing Program and the services Vohra renders thereunder;

(d) Corrective advertising, as permitted by statute;

(e) Disgorgement of all of Vohra's ill-gotten gains, as permitted by statute;

(f) Statutory damages, including multipliers and equitable enhancements, as permitted by statute;

(g) Reasonable attorneys' fees and costs, as permitted by statute;

(h) Pre-judgment and post-judgment interest on monetary damages, as permitted by statute; and

(i) Any other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests a jury for all issues so triable.

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.

/s/   *Marisa R. Dorough*
Kristine L. Roberts *(Special Admission pending*)
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2000
Facsimile: (901) 577-4202
Email: klroberts@bakerdonelson.com

Stephen M. Azia (*Special Admission pending*)
901 K Street, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 508-3400
Facsimile: (202) 220-2239
Email: sazia@bakerdonelson.com

Hal K. Litchford (Florida Bar No. 272485)
Email: hlitchford@bakerdonelson.com
Marisa Rosen Dorough (Florida Bar No. 73152)
Email: mdorough@bakerdonelson.com
SunTrust Center
200 South Orange Avenue
Post Office Box 1549
Orlando, Florida 32802
Telephone: (407) 422-6600
Facsimile: (407) 841-0325

*Attorneys for Wound Care Concepts, Inc.*

- 34 -