**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**Case No. 0:19-cv-62078-RS**

Wound Care Concepts, Inc.,

        Plaintiff,                     **JURY TRIAL DEMANDED**

v.

Vohra Health Services, P.A.; Vohra Wound
Physicians Management, LLC; Florida Post
Acute Care Clinicians, LLC; Vohra Post Acute
Care Physicians of Texas, PLLC;
Vohra Post Acute Care Physicians of the East,
PA; Vohra Post Acute Care Physicians of the
Northeast, PA; Vohra Wound Physicians of CA,
P.C.; Vohra Wound Physicians of FL, LLC;
Vohra Wound Physicians of IL. S.C.; Vohra
Wound Physicians of NY, PLLC; and Vohra
Wound Physicians of the West, P.C.,

        Defendants.

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Wound Care Concepts, Inc. ("Plaintiff" or "WCC"), files this Amended

Complaint against Defendants, Vohra Health Services, P.A. ("VHSPA"); Vohra Wound

Physicians Management, LLC ("VWPM"); Florida Post Acute Care Clinicians, LLC ("FPA");

Vohra Post Acute Care Physicians of Texas, PLLC ("VPA of TX"); Vohra Post Acute Care

Physicians of the East, PA ("VPA of East"); Vohra Post Acute Care Physicians of the Northeast,

PA ("VPA of NE"); Vohra Wound Physicians of CA, P.C. ("VWP of CA"); Vohra Wound

Physicians of FL, LLC ("VWP of FL"); Vohra Wound Physicians of IL. S.C. ("VWP of IL");

Vohra Wound Physicians of NY, PLLC ("VWP of NY"); and Vohra Wound Physicians of the

West, P.C. ("VWP of West") (collectively, the "Vohra Defendants" or "Vohra"), seeking

damages and permanent injunctive relief arising from Vohra's concerted unlawful business

- 1 -

practices, including Vohra's leveraging unfair competitive advantages gained by making misrepresentations and misleading statements about their business and services and the services of WCC and other competitors, as well as interfering with WCC's business relationships despite patients' freedom of choice, and states as follows:

## INTRODUCTION

1.      WCC is in the business of providing surgical wound dressings[1] ("wound dressings") in nursing homes and other long-term care facilities ("Facilities") throughout the United States.  WCC has built its reputation on supplying wound dressings to patients as a Medicare-enrolled supplier of durable medical equipment, prosthetics, orthotics, and supplies ("DMEPOS"), primarily serving patients with coverage under the Medicare Part B program ("Patients").  WCC operates its business in faithful adherence to the regulations imposed by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services ("CMS").

2.      The Vohra Defendants provide wound care physician services, referring to themselves collectively using the fictitious moniker "Vohra Wound Physicians" (or simply "Vohra") and touting this seemingly singular entity on their joint website as the "largest wound care specialty group focused on the post-acute market."  The Vohra Defendants represent that "Vohra Wound Physicians" has 250 physician wound care specialists across 27 states treating thousands of Patients daily, and market, portray, and effectively conduct themselves as a single entity based in Miramar, Florida, that provides physician services, and now wound dressings, to

---

[1] Medicare classifies dressings used for the treatment of wounds as "surgical dressings," and such dressings are covered by Medicare under the surgical dressings benefit.  *See* 42 U.S.C. § 1395k, 1395x(s)(5); *see also* Medicare Benefit Policy Manual, Ch. 15, § 100.  For purposes of the allegations in this Amended Complaint, Plaintiff will generally use the term "wound dressings," though Medicare and industry participants also use the terms "surgical dressings" and "surgical wound dressings."

the Patients of Facilities across the country.

3.      Not long ago, WCC's and Vohra's roles were complementary, not competitive: WCC provided (and today still provides) wound care products, namely wound dressings, to Medicare Part B patients in Facilities and billed them directly to Medicare Part B; Vohra provided physician bedside consultation for Patients with wounds at Facilities.  WCC and Vohra had significant overlap in the Facilities (*i.e.*, customers) each serves, working alongside one another to provide items and services to mutual Patients.

4.      However, since the creation and offering of the Vohra Defendants' new wound dressing supplier services, called the "Dressing Dispensing Program" and/or the "Wound Care Dressing Program" (the "Program"), Vohra now furnishes both physician services and wound dressings to Facilities' Patients under the name "Vohra Wound Physicians" and thus directly competes with WCC and other suppliers of wound dressings.  Vohra has made clear it is a competitor of WCC; many Vohra Physicians now disparage WCC's services to Facilities and/or refuse to work with WCC's employees.  Vohra has resorted to paying Vohra Physicians up to $1000 for each Facility they convinced to order wound dressings through the Program.  And Vohra Physicians are even directing in their medical records that the Vohra Dressing Dispensing Program will be supplying wound care dressings and that it is not medically necessary to order dressings from any DME[2] supplier for their Patients, thereby misrepresenting to Facilities that— as a *medical necessity*—they cannot use a competitor's wound dressings.

5.      Fundamentally, "Vohra Wound Physicians" is simply not what it publicly claims to be.

6.      For the Vohra Defendants, the truth is whatever is useful and convenient to them

---

[2] The term "DME" refers to "durable medical equipment" and is often used in the industry interchangeably with "DMEPOS."

4821-5420-8178v10
2932891-000003 02/17/2020

at the moment.  When it is advantageous to their business and branding to be one group of "expert wound care physicians" with a national physician practice and supplier capabilities that is based in Miramar, Florida and has been in operation since 2000, that is exactly how they represent themselves—whether in their advertising to the public, their contracting with Facilities, their services to Patients, or their competition against other suppliers like WCC.  Conversely, when it is more advantageous for them to be separate companies with distinct practice locations across the country, whether to enable them to enroll with Medicare to provide DMEPOS supplies or to bring and defend legal claims, including this suit as well as recent litigation that the Vohra Defendants jointly brought against WCC in Pennsylvania[3]—then the Vohra Defendants assert that they are separate businesses, each with their own relationships and reputations.

7.     The use of the single entity façade is deceptive and unfair to the public and to competitors, including WCC.  Having adopted "Vohra Wound Physicians" in its dealings with the public and with Facilities, the public and Facilities are misled, and often never realize, who they are actually dealing with or what role and responsibilities "Vohra Wound Physicians" has.  The Vohra Defendants intentionally all use "Vohra Wound Physicians" (despite that they have not registered the fictitious trade name in every jurisdiction where they do business) to intentionally obscure the existence of, and relationships between, the various Vohra Defendants.  So pervasive is the "Vohra Wound Physicians" façade that sometimes even Vohra and its employees are confused as to who works for which of the Vohra Defendants.

8.     Even once the public façade of "Vohra Wound Physicians" is peeled back, the Vohra Defendants continue to misrepresent their business operations.  Physician groups who enroll as DMEPOS suppliers and serve only their own Patients are afforded several exemptions

---

[3] *Florida Post Acute Care Clinicians, LLC v. Gentell, Inc.*, Case No. 2:19-cv-05899-CFK (E.D. Pa.).

4821-5420-8178v10
2932891-000003 02/17/2020

from the regulations governing DMEPOS suppliers.  The Vohra Defendants have enrolled as separate physician groups to take advantage of those exemptions and reap a competitive advantage from the time and cost savings provided by the exemptions in an unfair manner, as the Vohra Defendants do not operate as traditional physician groups for whom those exemptions were intended and do not appear to faithfully comply with the conditions necessary to claim those exemptions.  Paradoxically, the entity in Miramar, Florida, that manages the wound dressing business, including contracting with a manufacturer/distributor of wound dressings to purchase dressings to be supplied to Patients at Facilities, contracting with Facilities to provide dressings, and submitting Medicare Part B claims, is Defendant VWPM, which is actually not enrolled as a DMEPOS supplier.

9.     To enter this market and increase their market share, the Vohra Defendants, individually and collectively, have engaged in unlawful and improper practices that violate federal and state law and allow them to gain improper competitive advantages, deceptively induce Facilities to do business with Vohra, unjustifiably interfere with WCC's business, and reap ill-gotten profits at the expense of Medicare and lawful competitors like WCC. For example, the Vohra Defendants, though their employees and agents, especially their employed or contracted physicians (the "Vohra Physicians"), intentionally, willfully, and concertedly act in a misleading manner and use omissions of material facts, such as:

    a.   mischaracterizing its collection of affiliated companies as a single national physician group for marketing purposes;

    b.   obfuscating the true identity of the legal entity supplying the wound dressings;

    c.   concealing the role of Defendant VWPM, which is not a DMEPOS supplier, but is the entity managing the supplier operation, contracting with a manufacturer/distributor of wound dressings, contracting with Facilities to

4821-5420-8178v10
2932891-000003 02/17/2020

provide dressings, and submitting Medicare Part B claims—all from its address in Miramar, Florida;

d.  exploiting the position of trust held by Vohra Physicians due to their status as physicians to engage in "white coat marketing" of the Program to supply wound dressings;

e.  informing Facilities that they "must" use the Program if they wish to use or have access to Vohra Physicians' wound consultation services;

f.  implying that the furnishing of wound dressings by Vohra Physicians is somehow superior to or different than using the services of a "DMEPOS supplier";

g.  making false and misleading statements in Patients' medical records that ordering prescribed wound dressings through "any DME[POS] supplier" (such as WCC) is not "medically necessary"; and

h.  making false statements to certain Facilities that WCC has lost its enrollment status.

10.    Vohra's business model results in improper Medicare billing, dispensing, and reimbursement for wound dressings, as well as ill-gotten additional revenues and profits for Vohra though unjustified misrepresentations and interference with WCC's lawful business and long-standing customer relationships.

11.    The Vohra Defendants' two-faced conduct is intended to create and exploit competitive advantages.  From any perspective, however, it is false, misleading, deceptive, and thus unlawful under state and federal law, and contravenes the spirit and intent of Medicare statutes and regulations.

4821-5420-8178v10
2932891-000003 02/17/2020

## The Parties

12.    Plaintiff WCC is a Pennsylvania corporation with its principal place of business in Bristol, Pennsylvania.

13.    Upon information and belief, Defendant Vohra Health Services, P.A. ("VHSPA") is or was a Florida professional services corporation with its headquarters and principal place of business located at 3601 S.W. 160th Avenue, Suite 250, Miramar, Florida 33027 (the "Miramar Address").   Upon information and belief, VHSPA was a physician group whose physicians practiced in Florida and other states.  VHSPA is the predecessor-in-interest to, or is now known as, Florida Post Acute Care Clinicians, LLC.

14.    Defendant Vohra Wound Physicians Management, LLC ("VWPM") is a Delaware limited liability company with its principal place of business located at the Miramar Address.  VWPM has registered with the Florida Secretary of State its principal place of business and mailing address as the Miramar Address.

15.    Defendant Florida Post Acute Care Clinicians, LLC ("FPA") is a Florida limited liability company with its principal place of business and mailing address located at the Miramar Address.  Upon information and belief, FPA is a physician group whose physicians practice in Florida.  FPA is a successor-in-interest to VHSPA.

16.    Defendant Vohra Post Acute Care Physicians of Texas, PLLC ("VPA of TX") is a Texas professional limited liability company with its purported principal place of business at 17218 Preston Road, Suite 2000, Dallas, TX 75252-5736.  Upon information and belief, VPA of TX is a physician group whose physicians practice in Texas.  VPA of TX registered with the Texas Secretary of State its mailing address as the Miramar Address.

17.    Defendant Vohra Post Acute Care Physicians of the East, PA ("VPA of East") is a New Jersey professional association with its purported principal place of business located at

- 7 -

7444 Holabird Avenue, Suite A, Baltimore MD 21222.  Upon information and belief, VPA of East is a physician group whose physicians practice in Connecticut, the District of Columbia, Delaware, Kentucky, Maryland, Minnesota, New Jersey, Tennessee, and South Carolina.  VPA of East has also registered with the Kentucky and Maryland Secretaries of State its principal office address as the Miramar Address.

18.     Defendant Vohra Post Acute Care Physicians of the Northeast, PA ("VPA of NE") is a Florida professional association with its purported principal place of business located at 8400 Bustleton Avenue, Suite 9, Philadelphia, PA 19152-1918.  Upon information and belief, VPA of NE is a physician group whose physicians practice in Massachusetts and Pennsylvania. VPA of NE has also registered with the Florida and Massachusetts Secretaries of State that its principal office and mailing address is located at the Miramar Address.

19.     Defendant Vohra Wound Physicians of CA, P.C. ("VWP of CA") is a California professional corporation with its purported principal place of business located at 2716 International Boulevard, Oakland, CA 94601. Upon information and belief, VWP of CA is a physician group whose physicians practice in California.  VWP of CA registered with the California Secretary of State its principal address and mailing address as the Miramar Address.

20.     Defendant Vohra Wound Physicians of FL, LLC ("VWP of FL"), is a Florida limited liability company with its purported principal place of business and mailing address located at the Miramar Address.  Upon information and belief, VWP of FL is a physician group who physicians practice in Alabama, Georgia, Ohio, Oklahoma, Rhode Island, Missouri, and Virginia.  VWP of FL has registered with the Alabama, Georgia, Ohio, Rhode Island, Missouri, and Virginia Secretaries of State its principal place of business and/or its mailing address as the Miramar Address.

4821-5420-8178v10
2932891-000003 02/17/2020

21.     Defendant Vohra Wound Physicians of IL. S.C. ("VWP of IL") is an Illinois service corporation with its purported principal place of business located at 121 S. Wilke Road, Suite 236, Arlington Heights, IL 60005.  Upon information and belief, VWP of IL is a physician group whose physicians practice in Illinois.  VWP of IL registered with the Illinois Secretary of State that its President is Shark Bird at the Miramar Address.

22.     Defendant Vohra Wound Physicians of NY, PLLC ("VWP of NY") is a New York professional limited liability company with its purported principal place of business located at 23-91 Bell Boulevard, Suite LL3B, Bayside, NY 11360.  Upon information and belief, VWP of NY is a physician group whose physicians practice in New York and North Carolina.  VWP of NY registered with the New York and North Carolina Secretaries of State its mailing address and/or address for process as the Miramar Address.

23.     Defendant Vohra Wound Physicians of the West, P.C. ("VWP of West") is a Colorado professional corporation with its purported principal place of business located at 730 W. Hampden Avenue, Englewood, Colorado 80110-2120.  Upon information and belief, VWP of West is a physician group whose physicians practice in Colorado and Indiana. VWP of West also registered with the Colorado Secretary of State its principal office address as the Miramar Address.

24.     "Vohra Wound Physicians" is a fictitious trade name and not a separate legal entity.  Upon information and belief, each of the Defendants, individually and collectively, holds itself out to the public and does business as "Vohra Wound Physicians."   Yet some of the Defendants have not formally registered to use that fictitious trade name in each applicable jurisdiction, including, but not limited to: (i) VWPM has not registered to do business in Florida as "Vohra Wound Physicians" but VWPM does business as "Vohra Wound Physicians" in Florida; and (ii) VPA of NE has not registered the fictitious name "Vohra Wound Physicians" in

Massachusetts or Pennsylvania, but VPA of NE does business as "Vohra Wound Physicians" in both states.

25.     For the purposes of this Amended Complaint, the defendants that are physician groups, namely, FPA, VPA of TX, VPA of East, VPA of NE, VWP of CA, VWP of FL, VWP of IL, VWP of NY, and VWP of West, are referred to hereinafter as the "Affiliate Defendants." The Affiliate Defendants, together with VHSPA and VWPM, are collectively referred to as the "Vohra Defendants" or "Vohra."

## Jurisdiction and Venue

26.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this action, as it is alleged that each of the Vohra Defendants violated Section 43 of the Lanham Act, 15 U.S.C. § 1125.

27.     Pursuant to 28 U.S.C. § 1332, this Court also has original jurisdiction over this matter because there is complete diversity of citizenship between Plaintiffs and the Vohra Defendants, except VPA of NE, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

28.     With respect to VPA of NE, this Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) as Plaintiff's claims against VPA of NE claims are so related to the diversity claims in this action that they form part of the same case or controversy.

29.     Venue is proper in this district under 28 U.S.C. § 1391 because the Vohra Defendants have transacted business in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

30.     Pursuant to Florida Statutes § 48.193(2), this Court has personal jurisdiction over VWPM, which has its principal place of business in Florida and conducts its business from, as well as directs, supervises, and manages the operations for all the Affiliate Defendants from the

Miramar Address.

31.     Pursuant to Florida Statutes § 48.193(2), this Court has personal jurisdiction over all the Vohra Defendants because each is engaged in substantial and not isolated activities within this state.  This includes, but is not limited to, contracting with VWPM to be their authorized agent and for VWPM to direct, supervise, and manage all of their physician and DMEPOS supplier operations from the Miramar Address.  This relationship between VWPM and the Affiliate Defendants involves purposeful, knowing, continuous, and systematic business contract with Florida by the Affiliate Defendants, including communicating and interacting with VWPM and its Florida-based employees on at least a weekly basis.  Upon information and belief, VWPM is involved in every aspect of the Affiliate Defendants' businesses, including the provision of services relating to DMEPOS supplies and the submission of Medicare Part B claims for DMEPOS supplies, which are issues in this suit.  In addition, the Affiliate Defendants regularly represent the Miramar Address as their address, including in their marketing to the public and business operations.

32.     Moreover, VHSPA, FPA, VPA of NE, and VWP of FL are each entities created under the laws of the State of Florida and remain actively registered with the Florida Secretary of State (except for VHSPA, which voluntarily dissolved in November 2019).  FPA employs physicians who practice in Florida and purportedly dispense wound dressings in Florida.

33.     This Court also has specific personal jurisdiction over the Vohra Defendants pursuant to Florida Statutes § 48.193(1) because Plaintiff's causes of action arise out of Defendants' (i) operating, conducting, engaging in, and carrying on business operations within the state, particularly at, to, or through the Miramar Address, either directly or through their authorized agent VWPM; and (ii) committing tortious acts in this state that have caused injuries to WCC.  As described below, the Vohra Defendants have committed acts constituting unfair and

- 11 -

deceptive trade practices, tortious interference with WCC's contracts and business relationships, and deceptive advertising in violation of the laws of various federal and state laws, all with the intent and effect of defrauding Medicare, harming competitors like WCC, and deceiving Facilities across the country.

## FACTUAL BACKGROUND

A.  **Medicare Part B Coverage for Covered Wound Dressings**

i.  ***Covered Services Generally***

34.     Generally, Medicare Part B covers healthcare items and services that (1) are eligible for a defined Medicare benefit category, (2) are reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and (3) meet all other applicable Medicare statutory and regulatory requirements.  *See* 42 U.S.C. §§ 1395k, 1395l, 1395y(a)(1)(A).

35.     Medicare Part B makes payment for wound dressings provided to a patient in a facility when the patient's stay is not covered under Medicare Part A.  When a facility patient is in a covered Part A stay, the facility is responsible for providing wound dressings at its own expense.  42 U.S.C. § 1395yy(e)(1).  When a patient's stay is not covered under Part A, some medically necessary items can be provided and paid under Part B, including wound dressings.

36.     Medicare coverage for any particular product or service, such as a type of wound dressing, is determined by statute and CMS regulations; CMS manual guidance including national coverage decisions, which outline the conditions under which an item or service is covered; and Local Coverage Determination ("LCD") guidance by Medicare contractors (called Medicare Administrative Contractors ("MACs"), which process claims for Medicare and make determinations as to whether payment should be made.  The purpose of LCDs is to provide information regarding what Medicare considers to be "reasonable and necessary," as well as

outline other payment rules that must be satisfied to obtain Medicare reimbursement.

37. Medicare covers wound dressings under the surgical dressings benefit. 42 U.S.C. § 1395k, 1395x(s)(5).

38. "Surgical dressings" (wound dressings) are considered medical supplies for purposes of Medicare Part B coverage and are typically reimbursed in accordance with the DMEPOS fee schedule. 42 C.F.R. § 410.36(a)(1); Medicare Claims Processing Manual, Ch. 20, § 30. Wound dressings are generally billed to Medicare Part B when they are "medically necessary" and provided by a Medicare-enrolled DMEPOS supplier to a Medicare Part B-covered Patient. 42 C.F.R. § 424.57(b).

39. For a beneficiary to be eligible for DMEPOS under Medicare, a physician is required to evaluate the Patient and determine that the DMEPOS is medically necessary.

*ii.* ***Requirements for DMEPOS Suppliers***

40. 42 C.F.R. § 424.57, entitled "*Special payment rules for items furnished by DMEPOS suppliers and issuance of DMEPOS supplier billing privileges,*" sets forth the conditions a DMEPOS supplier must meet in order to be eligible to receive payment for a Medicare-covered item "on or after the date CMS issued to the supplier a DMEPOS supplier number conveying billing privileges." The regulation specifically defines "DMEPOS supplier" to mean "an entity or individual, including a physician or a Part A provider, which sells or rents Part B covered items to Medicare beneficiaries and which meets the standards in paragraphs (c) and (d) of this section."

41. Paragraph (c) of 42 C.F.R. § 424.57 contains the requirements a supplier must meet in order to certify its application for billing privileges as a DMEPOS supplier. Once a supplier meets these numerous requirements, applies, and becomes approved as a DMEPOS supplier, the supplier is issued a DMEPOS supplier number (a "PTAN") and obtains Medicare

billing privileges.  The DMEPOS supplier must operate subject to 42 C.F.R. § 424.57 while it holds such billing privileges.

42.     A DMEPOS supplier may not allow another company to use its PTAN number to supply items.

### iii.     Requirements for Physician vs. Non-Physician DMEPOS Suppliers

43.     Significantly, the requirements for enrolling as a DMEPOS supplier can vary depending on the type of applicant; for instance, a medical supply company like WCC has different requirements than a physician or physician group serving its own Patients.  Medicare regulation and guidance contain exemptions for certain applicants, particularly physician applicants.

44.     If a physician or physician group enrolls as a DMEPOS supplier (a "physician DMEPOS supplier"), it can be exempted from certain requirements so long as the items are furnished only to the physician's own Patients as part of the physician's own service, namely:

(i) Physicians are exempted from obtaining a surety bond in an amount of at least $50,000 per practice location;

(ii) Physicians are exempted from the requirement that their practice location be open to the public a minimum of 30 hours per week;

(iii) Physicians are exempted from the requirement of obtaining and maintaining accreditation from a CMS-approved independent national Accreditation Organization; and

(iv) Physicians are exempted from the prohibition that a DMEPOS supplier cannot share a location with another provider.

These exemptions are referred to herein collectively as the "Exemptions."

45.     These requirements can be costly and time-consuming standards for those

4821-5420-8178v10
2932891-000003 02/17/2020

applicants which are not exempted. Accreditation Organizations charge a fee to obtain and maintain accreditation, and CMS has developed specific quality standards that require each applicant to meet additional accreditation standards (for example, for training employees and instituting business policies and procedures). The application process can be lengthy and can include unannounced on-site visits to ensure compliance with Medicare rules and the accreditation standards. Fees for surety bonds vary and increase over time.

46.     The Exemptions enable physician DMEPOS suppliers to avoid these costly and time-consuming requirements on the condition that the items are furnished only to the physician's own Patients as part of the physician's professional services.

47.     Non-physician DMEPOS suppliers, including medical supply companies like WCC ("non-physician DMEPOS suppliers"), are not exempt from these requirements. However, non-physician DMEPOS suppliers are generally entitled to supply DMEPOS supplies to any Patient who chooses them.

48.     WCC is a non-physician DMEPOS supplier.

49.     Upon information and belief, Affiliate Defendants enrolled as physician DMEPOS suppliers and are availing themselves of all of the exemptions afforded physician DMEPOS suppliers (for example, by not obtaining accreditation or a surety bond).

50.     Upon information and belief, Defendant VWPM is not enrolled as a physician DMEPOS supplier or non-physician DMEPOS supplier, but it is in effect serving as a supplier: Defendant VWPM contracts with a manufacturer/distributor of wound dressings to purchase wound dressings for Facility Patients and contracts with Facilities to provide the dressings from its address in Miramar, Florida—all under the name of a national provider, "Vohra Wound Physicians." In so doing, the Vohra Defendants are improperly taking advantage of and claiming the Exemptions, while misrepresenting and concealing the true nature of their business.

- 15 -

## B.   WCC's Wound Care Business

51.    For over nine years, WCC has been an enrolled DMEPOS supplier of wound dressings, dispensing wound care products and serving Patients in Facilities across the United States, including Florida.  WCC's primary services are supplying appropriate wound dressings to Medicare Part B-covered Patients in such Facilities and handling the required billing for those products through Medicare Part B.

52.    WCC prides itself on its commitment to ensuring that its billing strictly conforms to Medicare coverage and billing requirements ("Medicare Guidelines"), described above. Facilities turn to WCC for dressings because of its conscientious commitment to adhering to supplier standards when providing such wound care products.

53.    Since WCC incorporated in 2005, it has grown its business to span the country. WCC currently operates in 49 states and employs approximately 90 people. WCC attributes its growth to its investment in customer service, its industry reputation as a compliant Medicare Part B wound dressing supplier, and word of mouth among Facilities.

54.    For example, since mid-2018, WCC has done business with about 95 Facilities in the state of Florida alone.  WCC has recently lost business from several Facilities in Florida due to Vohra's deceptive and wrongful business practices, as described herein.

55.    As a non-physician DMEPOS supplier, WCC's business relies on contracting with Facilities to provide Part B-covered wound dressings to the Facilities' Patients, where those items have been prescribed by a physician as medically necessary.

56.    The majority of the wound dressings supplied by WCC are manufactured by Gentell, Inc. ("Gentell").  Although WCC and Gentell are separate companies, WCC is sometimes referred to colloquially as "Gentell" due to its long-standing provision of Gentell products and due to the fact that WCC and Gentell are affiliated companies.

- 16 -

57.     All of WCC's contracts with Facilities, which provide for WCC to supply wound dressings to the Facility's Patients, are non-exclusive.  No contract between WCC and a Facility requires the Facility to order or use supplies from WCC or to use Gentell products.

58.     WCC and Vohra's customers have overlapped in the past because they both provided services related to wound treatment to Facilities; to the extent that a Facility had contracted with WCC to provide supplies and with Vohra to provide physician consultations, WCC's and Vohra's services were not in competition.  Prior to about June 2018, in WCC's experience, a Vohra physician (like any other physician) would dictate a Patient's wound care treatment and prescribe wound dressings to accomplish that treatment, and WCC would supply the prescribed products to the Patient.

59.     Around June 2018, WCC learned that Vohra, and specifically Vohra Physicians, were marketing to Facilities the Program, a new wound dressing supply service that directly competes with WCC's services.

60.     Since approximately June 2018, numerous Facilities who were customers of WCC have ended their ongoing business relationships with WCC as a result of Vohra's unlawful and dishonest business practices in operating the Program, as Vohra solicits these Facilities under false pretenses and through misrepresentations regarding Vohra's services in relation to WCC and other DMEPOS suppliers.  Despite WCC's efforts to put Vohra on notice that its practices are unlawful, Vohra has continued to expand its Program, knowingly and unjustly harming WCC's business and its ability to compete to lawfully serve Facilities.

**C.  Vohra's Business**

61.     The Vohra "brand" was founded by Dr. Ameet Vohra in Florida around 2000.  The Vohra Defendants provide physician-led on-site wound consultations, wound care management, and wound care credentialing to Facilities.  Collectively, the Vohra Defendants

- 17 -

claim to employ around 250 physicians (the "Vohra Physicians"), operate in 27 states, and work with over 2,500 skilled nursing Facilities, including many in Florida.

62.     While Vohra's physicians have provided professional services in the nature of on-site consultation and treatment of wounds, until recently, they did not supply the wound dressings that would be applied in the treatment of those wounds.

63.     Upon information and belief, the Affiliate Defendants are enrolled with Medicare as separate physician groups, each with a different practice location(s).   Enrollment with Medicare as a physician group is distinct from enrollment as a DMEPOS supplier.

64.     Upon information and belief, the Affiliate Defendants (but not VWPM) are enrolled with Medicare as physician DMEPOS suppliers.   Upon information and belief, as physician DMEPOS suppliers, the Affiliate Defendants consider the Exemptions applicable to them and take advantage of the Exemptions.   Upon information and belief, however, many of Vohra's physicians practice in states other than their purported physician DMEPOS supplier locations.

65.     Starting in or around 2017, Vohra began advertising, marketing, and/or supplying wound dressings under the name "Vohra Wound Physicians" as a "national physician group" and supplier of wound dressings based at the Miramar Address.

66.     In or around June 2018, WCC learned that Vohra had begun promoting the Program, then known as the "Dressing Dispensing Program" and now called the "Wound Care Dressing Program," to Facilities as an additional service that could be offered by Vohra Physicians.

67.     Vohra represents itself to Facilities, Patients, and the public as "Vohra Wound Physicians," a single national physician group that provides on-site wound consultations, wound care management, and wound care credentialing to Facilities.   Vohra describes "Vohra Wound

- 18 -

Physicians" as having around 250 physicians treating Patients across 27 states and working with over 2,500 skilled nursing Facilities, including many in Florida.

68.     Since around mid-2017, the Vohra Defendants have knowingly agreed to act in concert with each other and conspired to interfere, directly and/or indirectly through the Vohra Physicians, with WCC's business, to unfairly compete with WCC and other Medicare-enrolled DMEPOS suppliers, and to market "Vohra Wound Physicians" in a misleading manner that harms WCC's business.   Each of the Affiliate Defendants have entered into management agreements with VWPM, are under the effective control and direction of VWPM, and have appointed and authorized VWPM to be their agent.   The Affiliate Defendants are under common control by VWPM, which directs their marketing activities, among many other functions.

69.     In addition, the Affiliate Defendants, through their officers and employees, particularly the Vohra Physicians, willfully further this conspiracy by, including, but not limited to, engaging in concerted misleading marketing to Facilities, advertising to and supplying wound dressings to Facilities with an existing business relationship with WCC, as well as incentive policies for Vohra Physicians' pertaining to the Program.   The Affiliate Defendants communicate and conspire with other Affiliate Defendants and with VWPM to engage in the same or similar conduct and implement the same or similar policies in Facilities across the country.

70.     The Vohra Defendants, individually and collectively, have benefitted from this conduct, though the benefits are not necessarily uniform.

71.     WCC believes there may be additional corporate entities and individuals who knowingly have acted or are acting in concert with and conspiring with the Vohra Defendants whose identities WCC does not yet know.

4821-5420-8178v10
2932891-000003 02/17/2020

D.   **Vohra's Improper Conduct in Marketing and Operating the Program**

72.   Vohra advertises that its Dressing Dispensing Program is advantageous because "The dressings order is a part of the medical record and the notes received by each facility at the end of rounds."  Medical records Vohra Physicians create, however, contain misleading language stating that obtaining wound dressings through any DME supplier other than Vohra is not "medically necessary."

73.   Vohra advertises the services of "Vohra Wound Physicians" through their website www.vohrawoundcare.com (the "Website").  The Website portrays Vohra as one entity, referring to "Vohra Wound Physicians," or sometimes "Vohra" or "Vohra Physicians."  The Website does not indicate that "Vohra Wound Physicians" actually consists of numerous separate physician groups, nor does it mention VWPM or any of the Affiliate Defendants by their legal names.

74.   The Vohra Defendants use a standardized contract called a "Services Agreement" to enter into contracts with Facilities to provide physician services and/or supplier services.  A true and correct example of the Services Agreement is attached as **Exhibit "A."**

75.   The Services Agreement provides that "Vohra Wound Physicians" and the contracting Facility have responsibilities relating to providing wound dressings to the Facility's Patients.

76.   The Vohra Defendants execute the Services Agreement as "Vohra Wound Physicians ('Vohra') located at [the Miramar Address]."  The face of the Services Agreement does not state or suggest that "Vohra Wound Physicians" (1) is not a legal entity or (2) is not the legal entity that will be providing the services.  The Services Agreement also does not identify which of the Vohra Defendants is the actual entity with which a Facility is contracting.

77.   Upon information and belief, the Vohra Defendants do not tell the Facilities, and the Facilities are not aware, which of the Affiliate Defendants is the contracting legal entity or

- 20 -

which Affiliate Defendant employs any given Vohra physician providing services to that Facility or is supplying wound dressings to Facility Patients.

78.     Upon information and belief, the Vohra Defendants do not advertise to or inform the Facilities or the public whether "Vohra Wound Physicians" or the Affiliate Defendants are enrolled DMEPOS suppliers.  The Vohra Defendants merely tell Facilities that "Vohra Wound Physicians" can supply wound dressings to the Facilities' Patients.  Vohra exploits this ambiguity to create a false impression that their physicians can offer services superior to and/or different than enrolled DMEPOS suppliers like WCC.

79.     Vohra capitalizes on the position of trust held by Vohra Physicians, both as physicians generally and/or as physicians who have provided consultations and care to Facilities previously, to promote its unlawful or deceptive supplying of wound dressings.

80.     To gain a competitive advantage over WCC (and other competitors), the Vohra Defendants intentionally and willfully make misrepresentations and use omissions of material facts, including, but not limited to: (1) characterizing its collection of affiliated companies as a single national physician group operated out of the Miramar Address; (2) obfuscating the true identity of the supplier entity; (3) concealing the role of Defendant VWPM, the entity managing the supplier operation, contracting with a manufacturer/distributor of wound dressings, contracting with Facilities to supply dressings, and submitting Medicare Part B claims from its address in Miramar, Florida; (4) exploiting the position of trust held by Vohra Physicians due to their status as physicians to engage in "white coat marketing" of its Program to supply wound dressings; (5) informing Facilities, through the Vohra Physicians, that a Facility "must" use the Program if it wishes to use or have access to Vohra Physician wound consultation services; (6) implying that the supplier services offered by Vohra Physicians is somehow better than using the

- 21 -

services of a non-physician DMEPOS (or DME)[4] supplier; (7) making, though the Vohra Physicians, false and misleading statements in Patients' medical records that ordering the prescribed wound dressings through any DME supplier is not "medically necessary"; and (8) telling certain Facilities that WCC had lost its enrollment status, even though that is false.

81.     Clearly contemplating that the Program will be in direct competition with a Facility's existing DMEPOS supplier relationship(s), FAQs posted on the Website have assured Facilities that "Vohra is not replacing your current durable medical equipment provider, and we do not supply any products, except for primary and secondary dressings."

82.     Vohra has acknowledged to WCC privately that the Program directly competes with WCC's business.

83.     Despite the undeniable fact that the Vohra Defendants, to the extent they supply, refer, or profit from the furnishing of wound dressings to Part B Patients in Facilities, are competitors of WCC and are taking actions like a supplier (*e.g.,* procuring of supplies from a manufacturer/distributor according to a physician prescription and then later delivering the supplies via mail to a Facility for the patient), the Vohra Defendants are portraying their supplier services as somehow superior and/or different to those of a DMEPOS supplier—even though (1) the Affiliate Defendants appear to be enrolled as DMEPOS suppliers, (2) VWPM is not enrolled as a DMEPOS supplier but is improperly acting as such by purchasing the dressings, entering into agreements with Facilities, and managing the Affiliate Defendants' business in myriad ways, and (3) despite the fact that it is improperly acting like a DMEPOS supplier, VWPM could not be enrolled as a DMEPOS supplier since it shares the Miramar Address with FPA and since the applicable regulations require a separate DMEPOS enrollment for each location where dispensing occurs.

---

[4] As noted above, in the industry, DMEPOS and DME are often used interchangeably.

84.     Moreover, Vohra Physicians have made false and misleading statements in Patients' official medical charts implying that Vohra is not a DMEPOS supplier and that supplies ordered from a DMEPOS supplier, like WCC, would be "medically unnecessary."   For example, on November 19, 2019, following a Patient visit, Vohra Physician Brant Bennett, MD, entered the following into the Patient's medical chart (emphasis added):

> The Vohra dressing program is supplying the eligible wound care dressings for this patient.  For shipment tracking and other dressing order details for this visit please access the Vohra EMR portal.  **It is not medically necessary to order dressings from any DME supplier for this patient.**

A copy of the medical record page containing this directive, with protected health information ("PHI") redacted, is attached as **Exhibit "B."**

85.     Identical remarks were entered in different Patients' official medical records on November 23, 2019 by Vohra Physician Allison Murphree, MD, and on November 25, 2019 by Dr. Bennett.  Upon information and belief, other Vohra Physicians have been inserting this identical remark, and have been instructed to insert this remark by the Vohra Defendants, into other Patients' official medical records since around October 2019.

86.     Such a remark is false and misleading and creates an unfair competitive advantage for a number of reasons:

a.  This remark suggests that "Vohra Wound Physicians," or more accurately the Affiliate Defendant purportedly providing the supplier services, is not "a DMEPOS supplier." This reinforces the misimpression that supplies ordered by Vohra Physicians would be somehow superior and/or different than supplies furnished by a DMEPOS supplier.

b.  This remark misleads the Facilities into believing that ordering these wound dressing supplies from "any DME supplier"—in other words, any competitor of

Vohra, including WCC—would be "medically unnecessary."  On information and belief, the Facilities are being told and understand *from a physician* that ordering "medically unnecessary" supplies is improper that would result, at least, in the supplies being non-reimbursable by Medicare and may result in the Facility itself having to pay for those products.

c.   This remark is simply not required for the Vohra Physician to provide care or to instruct a Facility on Patient care.  It is intentionally included for the purpose of (if not the sole purpose of) providing a competitive advantage to Vohra.

d.   In fact, placing a remark misleadingly suggesting that prescribed wound supplies are "not medically necessary" if ordered from "any DME supplier" will likely prejudice the Facility from doing business with any other DMEPOS supplier.  For an audit, a DMEPOS supplier is often is required to produce medical records to support the "medical necessity" of a claim; if the patient's medical records do not support medical need, the claim may be denied or the supplier required to repay the claim.  Vohra's language is designed to falsely suggest that only dressings provided by Vohra would be medically necessary.

e.   Moreover, by misleading Facilities into believing that the covered supplies cannot be furnished by "any" (or even "any other") DMEPOS supplier, Vohra deprives Facilities and Patients of their freedom of choice.

87.   That remark is but one example of the false and misleading statements made by the Vohra Defendants to unfairly create a competitive advantage over WCC.  Indeed, the Vohra Defendants' advertising, marketing, and operation of the Program has relied on numerous misleading representations, implicit misrepresentations, and material omissions to induce Facilities to participate in the Program and to not use competing DMEPOS suppliers.

- 24 -

88.     Since at least June 2018, Vohra has been soliciting Facilities for the Program through its website, by mail, by email, and in person, including Facilities that Vohra knows are WCC customers.

89.     For example, on June 21, 2018, Vohra, on "Vohra Wound Physicians" letterhead, sent a letter to one of WCC's customers, Bria Healthcare Services of Geneva in Geneva, Illinois, with a customized advertisement for the Program (the "Letter Advertisement").  A copy of the Letter Advertisement is attached in **Composite Exhibit "C"** hereto.

90.     The Letter Advertisement was sent under the name of the Vohra physician who was serving that particular Facility.  It states, in part: "Today, the Vohra physician who treats your patients at bedside is offering to coordinate the delivery of the wound dressings that your residents need. . . .  Vohra dispenses the dressings; your current third party supplier continues to provide all your other Part B supplies."  *See* Comp. Ex. "C" at 1.

91.     Vohra's marketing to Bria also includes a "Questions & Answers" handout, which represents that "Vohra will dispense dressings for qualified Medicare Part B (non-skilled) patients," and "[a]s a participating Medicare Part B provider, Vohra bills the resident's insurance directly."  It further states, "Vohra is not replacing your current [DME] provider, and we will not supply any products, *except for primary and secondary dressings*."  *See* Comp. Ex. "C" at 2 (emphasis added).

92.     On or around June 28, 2018, Vohra sent an email advertising the Program to Facilities (the "Email Advertisement"), at least eight of which were current WCC customers, including Advanced Rehab & Health Care of Live Oak in San Antonio, Texas.   Vohra's representations in the Email Advertisement are largely identical to those in the Letter Advertisement.

93.     These advertisements contain false and misleading representations and/or omit material facts in several respects:

    a.   The Letter and Email Advertisements from "Vohra Wound Physicians" do not identify which specific legal entity would be performing the physician or supplier services.

    b.   "Vohra Wound Physicians'" statement that it is a "participating Medicare Part B provider" is misleading in this context both because it suggests that its status as an enrolled physician group allows it to lawfully supply wound care supplies as advertised and does not acknowledge that the entity that would actually provide the services is an enrolled DMEPOS supplier.

    c.   Vohra also misleadingly suggests that the Program does not replace the Facility's current DMEPOS suppliers; however, the Program does provide the same services as WCC and therefore intends to replace, and indeed has replaced, WCC as the Facilities' DMEPOS supplier of wound care dressings.  WCC's business is, in fact, to *provide primary and secondary wound dressings*.

    d.   Conspicuously, these advertisements say nothing about the Vohra Physician applying or supervising the application of the dressings during a Patient visit, as a physician might do as part of the physician's own service to the physician's own Patients.  Instead, it indicates that while the Vohra Physician places the order for the dressings upon visiting a Patient, the dressings are *received and applied hours or days later by someone other than the physician*.

94.     Upon information and belief, Vohra physicians have made misrepresentations and misleading statements to Facility administrators to convince them that Vohra, and not any other company, must supply the products prescribed by Vohra physicians.

- 26 -

95.     Facility administrators and directors of nursing, who are generally the decision-makers as to contracts for wound care supplies, have reported to WCC that Vohra physicians have told them that Vohra "must" also now supply the dressings being used on their Patients.  As one example, in or around August 2018, a Vohra physician told the administrator at New Carlton Nursing Home and Rehab in Brooklyn, New York, that Vohra had to supply the products prescribed by the Vohra physician.  New Carlton terminated its business with WCC in favor of Vohra.

96.     Such statements, which often were made by Vohra Physicians when the Facility had an existing and ongoing business relationship with WCC, are patently false and exploitive of the position of trust physicians hold as in Facilities.

97.     Similarly, in March 2019, a Vohra Physician told nurses at the Concordia Nursing and Rehabilitation Facility in Henderson, North Carolina, that in order to use the Vohra physician services they have to order the supplies from Vohra, and if it did not, then the Facility would have to cancel its Vohra contract.  This statement was also misleading in that the Program is a separate and distinct service from Vohra physician consultation services, as made clear by the separate treatment of these services on Vohra's website, and that Vohra, upon information and belief, requires Facilities who already use its physician services to sign an amended contract in order to participate in the Program.

98.     Significantly, Vohra ships the wound dressings to Facilities for individual Patients by separate packages that each contains a packing slip reflecting the items delivered (the "Packing Slips").  The Vohra Defendants use a standard form for the Packing Slips.  An example of the Packing Slips, with only PHI redacted, is attached as **Exhibit "D"** hereto.

- 27 -

99.    The bottom portion of the Packing Slips contains, in relevant part, the following representation:

> **The products and/or services provided to you by Vohra Wound Physicians are subject to the supplier standards contained in the Federal regulations shown at 42 Code of Federal Regulations Section 424.57(c).** These standards concern business professional and operational matters (e.g., honoring warranties and hours of operation).

Ex. "B" (emphasis added).

100.   "Vohra Wound Physicians" is not an entity that is an enrolled DMEPOS supplier within the meaning set forth in 42 C.F.R. § 424.57(c), which regulation *pertains only to enrolled DMEPOS suppliers*.  Their Packing Slips, however, do not explicitly reference DME or DMEPOS.  Therefore, it is up to the recipient to know that 42 C.F.R. § 424.57(c) pertains to DMEPOS supplier standards.

101.   The Vohra Defendants misrepresent the wound dressings supplier as "Vohra Wound Physicians," since each of the Vohra Defendants (in addition to other affiliated companies) uses or has used the fictitious name "Vohra Wound Physicians."   Moreover, as shown above, the Packing Slips (1) identify "Vohra Wound Physicians" as the entity supplying the wound dressings; (2) list the address of the ordering physician as the Miramar Address (even though most of the physicians at issue do not actually practice in Miramar, Florida); and (3) direct any questions to the Miramar Address, listing a phone number associated with the Miramar Address, as well as listing a singular email address: dressings@vohraphysicians.com. The logical conclusion is that the supplier of the Facility Patients' wound dressings is "Vohra Wound Physicians," which appears to be a national provider of wound dressings out of Miramar, Florida, with a team of 250 wound care physicians.

102.   In addition, the Vohra Defendants are concealing from the Facilities, the Patients, and the Patients' families who is the actual supplier of wound dressings.   There is no

- 28 -

independent means for any person to determine *which legal entity is the actual supplier*.  This concealment of the true supplier and lack of transparency of care violates the purpose and spirit of Medicare supplier standards.

103.  These misrepresentations are material to the public and to customers, whether Facilities or Patients themselves.  Vohra's misrepresentations go to the nature and comparative quality of the supplier services furnished by Vohra's Program and WCC, which are material to the customers' decision-making in choosing a wound dressings supplier.

104.  Upon information and belief, Facilities believe the Vohra Defendants' representations that Facilities must use the Program and that ordering supplies from any other DMEPOS supplier is somehow improper, unlawful under the Services Agreement, or medically unnecessary.

105.  Vohra's use of these unfair and deceptive practices, along with the Vohra Physicians' trusted position as a treating professional to Facility Patients, creates an unfair competitive advantage by misrepresenting to Facilities that the Program provides superior wound dressings or otherwise superior and/or different wound care to the Facility's Patients.

106.  The Vohra Defendants' use of these unfair and deceptive practices wrongfully induces Facilities to do business with Vohra as "Vohra Wound Physicians" instead of WCC or any other competitor who faithfully abides by Medicare billing regulations and guidelines.

**E.**    **Vohra Knowingly Interferes with WCC's Relationships with Facilities**

107.    Vohra is also unjustifiably interfering and unfairly competing with WCC by supplying products to Facilities already doing business with WCC to supply such items and impeding WCC from delivering products requested by Facilities who wish to use WCC instead of Vohra.

108.    Vohra has attempting to interject itself as a supplier by delivering wound care

- 29 -

products to Facility Patients who are already being served by WCC. On multiple occasions, Vohra physicians have simply ordered, without the knowledge, consent, or desire of the Facility or Patient, wound dressing supplies for a Patient served by WCC, in willful disregard of WCC's existing business relationships with the Patient being served and the Facility.

109.    In these instances, the Vohra physicians knew that WCC was providing wound care supplies to a certain Facility's Patients, or alternatively should have known of WCC's existing supplier relationship with the Facility, as it would be readily evident to on-site providers that WCC was providing the wound dressings to the Facility's Patients.

110.    Vohra has also unlawfully misrepresented that participation in the Program is required to maintain physician wound consultation services from Vohra Physicians, exploiting the Facilities' existing relationships with Vohra Physicians and need for wound care physician services in order to divert business from WCC.  On multiple occasions, Vohra Physicians have misrepresented to the facility administrator or director of nursing at a Facility, that Vohra's physician and supplier services are tied together; in other words, the Facility "must" use the Program in order to use Vohra's physician consultation services, or alternatively, that Vohra is now providing wound dressing supplies to the Facility because the Facility wishes to use the Vohra physicians' services.

111.    In addition, in at least one instance around January 2020, a Facility, Trinity Place in Albemarle, North Carolina, decided to stop using Vohra's Program to supply wound dressings and begin using WCC as its supplier.  Vohra allegedly told the Facility that it requires ninety days' written notice to cancel its Services Agreement to provide wound dressing supplies and that it would not stop providing the supplies until sufficient notice was given.  Such refusal violated the Facility's Patients' freedom of choice and unjustifiably interfered with WCC's business relationship with that Facility.

**F.    Vohra Physicians are Incentivized to Solicit Business for the Program**

112.    The Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits persons from offering, paying, soliciting or receiving any remuneration that is intended to induce referrals, purchases, or orders of items or services reimbursed by a federal health care program.

113.    Florida's Anti-Kickback Statute, Florida Statutes § 456.054, makes it "unlawful for any health care provider or any provider of health care services to offer, pay, solicit or receive a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients."   Physicians and other health care providers who violate Florida's Anti-Kickback Statute can face administrative penalties (*e.g.*, administrative sanctions and possible loss of licensure) as well as criminal penalties.

114.    The Florida Patient Brokering Act, Florida Statutes § 817.505, makes it a crime for any health care provider or health care Facility to "[o]ffer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in case or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility."

115.    In addition to the foregoing improper competitive conduct, Vohra Physicians are offered monetary incentives on more than one occasion of up to $1000 for each Facility the physician persuades to place supply orders through Vohra's Program.  The clear purpose of such payments is for the Vohra Physicians to engage in "white coat marketing" by persuading and steering Facilities, using their trusted status as physicians, to order wound dressings from the Vohra Program by whatever means necessary.

116.    Upon information and belief, the Facilities targeted by Vohra for the Program do not have any knowledge or involvement in Vohra's kickbacks to its physicians.  Facilities have been deceptively induced into participating in the Program.

- 31 -

**G.   Vohra's Unlawful Business Practices Unjustly Damage WCC**

117.   Vohra's unfair and deceptive practices both misrepresent the nature and quality of the Program to Facilities and misrepresent the nature or relative quality of WCC's and other competitor's services to thwart open and fair competition, and have caused WCC to lose business from existing and potential customers.

118.   Upon information and belief, the Facilities that do business with the Vohra Defendants have no knowledge that Vohra is engaging in unfair and deceptive practices or making misrepresentations of material facts.

119.   The Vohra Defendants have interfered with and caused WCC to suffer loss of business at the following locations, among many others:

a.   Trinity Place in Albemarle, North Carolina, which told WCC around January 2020 that it wished for WCC to supply their wound dressings but then demurred when Vohra told the Facility that they would not stop providing the supplies because the Facility did not serve 90 days' notice to terminate Vohra's Services Agreement.

b.   Aldersgate Healthcare, Inc. d/b/a Susanna Wesley Health Center in Hialeah, Florida, which terminated its contract with WCC in or around May 2019.

c.   Hialeah Enterprise, LLC d/b/a Hialeah Shores Nursing and Rehab Center in Miami, Florida, which terminated its contract with WCC in or around May 2019.

d.   Miami Shores Nursing and Rehab Center in Miami, Florida, which terminated its contract with WCC in or around May 2019.

e.   Cayuga Ridge in Ithaca, New York, which terminated its contract with WCC in April 2019.  The Facility received products from Vohra and its Director of Nursing informed the WCC nurse that its Vohra physician was now supplying its wound care products.  WCC reached out to the Vohra physician who denied knowledge of Vohra's shipment.  Shortly thereafter, the Facility terminated its contract with WCC.

f.   Greene Meadows Nursing and Rehabilitation Center in Catskill, New York, which stopped doing business with WCC in November 2018 after notifying WCC by email that "[Vohra] has its own wound care supplies

and because of this we will be getting our supplies from [Vohra]."  Green Meadows formally terminated its contract as of December 10, 2018, expressly in favor of Vohra.

g.  Timberlyn Heights Rehabilitation and Care Center in Great Barrington, Massachusetts, which terminated its contract with WCC in the fall of 2018.  While WCC was the Facility's supplier, a Vohra physician solicited the Director of Nursing to use Vohra to supply their wound care products, leading to the Facility's termination of WCC shortly thereafter.

h.  New Carlton Rehab & Nursing Center in Brooklyn, New York, which WCC lost as a customer Facility around August 2018 to Vohra's Dressing Dispensing Program, where Vohra's administrator relayed to the WCC nurse that the Vohra doctor said he "had to" supply their wound dressings.

120.  WCC reasonably anticipates continuing to lose business due to Vohra's ongoing unfair business practices.

121.  As a result of the Vohra Defendants' unfair and deceptive practices, Vohra also has inappropriately and unlawfully received substantial business and referrals to provide wound care supplies that they otherwise would not have received.

122.  WCC has suffered damages in the form of terminated contracts, decreased business volume, and loss of referrals and other business opportunities because of Vohra's improper activities.

123.  WCC is also suffering from harm to its reputation and loss of goodwill that it has built up through a great deal of diligence, effort, and investment.  The competitive advantage that Vohra unjustly reaps through improper billing enables Vohra to deceptively portray WCC's services as inefficient, redundant, and unnecessary.

**CLAIMS FOR RELIEF**

**Count I — Tortious Interference with Contractual Relations
(against All Defendants)**

124.  WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

- 33 -

125.    This is a claim for relief for tortious interference with contractual relations under Florida common law.

126.    WCC has contracts with many Facilities, works diligently to maintain those contractual relationships, and is constantly working to establish contractual relationships with new Facilities.

127.    Vohra was and is aware of WCC's contractual relationships with these Facilities.

128.    Vohra has unjustifiably interfered with the relationships between WCC and its current Facilities.

129.    Vohra's actions are improper, intentional, malicious, unjustified, and made with the purpose of inducing Facilities to terminate or not to continue their respective contractual relationships with WCC.

130.    Vohra is aware that these Facilities and WCC are, or were, likely to do business with each other in the future, and that WCC anticipates, or anticipated, receiving continued business from these Facilities.

131.    As a direct result of Vohra's unjustified interference with WCC's contractual relations, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count II — Tortious Interference with Business Relationships
### (against All Defendants)

132.    WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

133.    This is a claim for relief for tortious interference with business relationships under Florida common law.

- 34 -

134.    WCC has business relationships with many Facilities and is constantly working to maintain those relationships and to establish relationships with new Facilities.

135.    Vohra is aware of WCC's ongoing and prospective business relationships with these Facilities.

136.    Vohra has interfered with the relationships between WCC and its current and prospective customers.

137.    Vohra's actions are improper, intentional, malicious, unjustified, and made with the purpose of inducing Facilities not to enter into or continue a business relationship with WCC.

138.    Vohra is aware that these Facilities and WCC are, or were, likely to do business with each other in the future, and that WCC anticipates, or anticipated, receiving continued business from these Facilities.

139.    As a direct result of Vohra's unjustified interference with WCC's business relationships, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count III — False Advertising in Violation of Lanham Act
### (against All Defendants)

140.    WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

141.    This is a claim for relief for violation of the Lanham Act's prohibitions on false advertising pursuant to 15 U.S.C. § 1125(a).

142.    Vohra's advertising claims implicitly conveying the legality of their services and Medicare billing arrangements are false and misleading, or false by necessary implication, commercial speech in violation of Section 43(a) the Lanham Act.

- 35 -

143.    Vohra's false, misleading, and implicitly false representations are made in commercial advertisements and promotions to current and prospective Facility customers.

144.    Vohra's false, misleading, and implicitly false advertising statements are likely to deceive Facilities.

145.    Vohra's false, misleading, and implicitly false advertising statements are made knowingly and recklessly to influence, and in fact have influenced, the decisions of Facilities as to who will supply wound care products to their Patients.

146.    Vohra's Dressing Dispensing Program is offered, advertised, promoted, and sold to Facilities in multiple states across the country, including Florida, and thus impacts interstate commerce.

147.    As a direct and proximate cause of Vohra's false, misleading, and implicitly false advertising, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count IV — Violation of Florida Deceptive and Unfair Trade Practices Act (against All Defendants)

148.    WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

149.    This is a claim for relief for violation of the Florida Deceptive and Unfair Trade Practices Act pursuant to Florida Statutes § 501.201 *et seq.*

150.    Vohra has engaged in numerous deceptive acts and unfair practices. Vohra's actions are deceptive and unfair to Facilities as well as Vohra's competitors, including WCC. Vohra's actions constitute deceptive trade practices under Florida Statutes §§ 501.201-501.213.

151.    WCC put Vohra on notice of its deceptive business practices at issue and the

- 36 -

harms that Vohra has caused WCC.

152.    As a direct and proximate cause of Vohra's actions, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

**Count V — Misleading Advertising**
**(against All Defendants)**

153.    WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

154.    This is a claim for relief for misleading advertising under Florida Statutes § 817.41.

155.    Vohra has made false, misleading, or implicitly false statements of material fact in soliciting business from Facilities that likely deceived the Facilities when they made decisions as to which company will supply wound care products to their Patients.

156.    Vohra knew or should have known that its misrepresentations would cause harm to its competitors by unfairly inducing customers to do business with Vohra rather than WCC or any other wound care supplier.

157.    Vohra's statements are intended to induce, have already induced, and will continue to induce, Facilities to choose Vohra's services over those services offered by WCC because of the unfair competitive advantage gained by Vohra's unlawful billing practices. Facilities have unknowingly and reasonably relied on Vohra's false, misleading, or implicitly false statements when making decisions as to which company will supply wound care products to their Patients.

158.    As a direct and proximate cause of Vohra's actions, WCC has suffered substantial

4821-5420-8178v10
2932891-000003 02/17/2020

monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

**Count VI — Unfair Competition**
**(against All Defendants)**

159.    WCC realleges and incorporates the preceding paragraphs 1 through 123 as if fully set forth herein.

160.    This is a claim for relief for unfair competition under Florida common law.

161.    As alleged above, Vohra Defendants are engaging in unlawful and improper practices that violate federal and state law and allow them to gain improper competitive advantages, as well as intentionally and willfully engaging in misrepresentations and omissions of material facts, including, but not limited to: (1) characterizing its collection of affiliated companies as a single national physician group operated out of the Miramar Address; (2) obfuscating the true identity of the supplier entity; (3) concealing the role of Defendant VWPM, the entity managing the supplier operation, contracting with a manufacturer/distributor of wound dressings, contracting with Facilities to supply dressings, and submitting Medicare Part B claims from its address in Miramar, Florida; (4) exploiting the position of trust held by Vohra Physicians due to their status as physicians to engage in "white coat marketing" of its Program to supply wound dressings—and offering monetary incentives to physicians to do so; (5) informing Facilities, through the Vohra Physicians, that a Facility "must" use the Program if it wishes to use or have access to Vohra Physician wound consultation services; (6) implying that the supplier services offered by Vohra Physicians is somehow better than using the services of a "DMEPOS supplier"; (7) making, though the Vohra Physicians, false and misleading statements in Patients' medical records that ordering the prescribed wound dressings through any DMEPOS

- 38 -

supplier is not "medically necessary"; and (8) telling certain Facilities that WCC had lost its enrollment status, even though that is false.

162.     Such actions unfairly render WCC, as an honest law-abiding competitor, at a significant competitive disadvantage.

163.     Vohra's conduct is contrary to honest practice in commercial matters, and its conduct is likely to confuse or deceive the public.

164.     As a result of Vohra's illegal actions and their representations to Facilities that such actions are legal, Vohra has confused Facilities and have substantially hurt WCC's ability to compete in the wound care supply market.

165.     Vohra's actions are willful, malicious, deceptive, and fraudulent.

166.     As a direct and proximate result of Vohra's unfair business practices, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.   WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

### Count VII — Civil Conspiracy
### (against All Defendants)

167.     WCC realleges and incorporates the preceding paragraphs 1 through 123, 125 through 131, 133 through 139, 141 through 147, 149 through 152, 154 through 158, and 160-166, as if fully set forth herein.

168.     The Vohra Defendants are parties to a civil conspiracy to commit tortious interference with WCC's advantageous business relationships with Facilities and Patients.

169.     The Vohra Defendants jointly agreed, conspired, and acted in concert to interfere with WCC's business relationships with Facilities and Patients.   The Vohra Defendants also agreed, conspired, and acted in concert to compete against WCC using unlawful means like false

and misleading representations about WCC specifically and about WCC generally as a DMEPOS supplier.

170.    The Vohra Defendants, directly or through their officers and employees, including the Vohra Physicians employed or contracted by the Affiliate Defendants, each performed one or more overt acts in furtherance of the conspiracy, including, but not limited to:

a.  mischaracterizing its collection of affiliated companies as a single national physician group for marketing purposes;

b.  obfuscating the true identity of the legal entity supplying the wound dressings;

c.  concealing the role of Defendant VWPM, which is not a DMEPOS supplier, but is the entity managing the supplier operation, contracting with a manufacturer/distributor of wound dressings, contracting with Facilities to provide dressings, and submitting Medicare Part B claims, all from its address in Miramar, Florida;

d.  exploiting the position of trust held by Vohra Physicians due to their status as physicians to engage in "white coat marketing" of the Program to supply wound dressings;

e.  directing, suggesting, or endorsing Vohra Physicians' informing Facilities that they "must" use the Program if they wish to use or have access to Vohra Physicians' wound consultation services;

f.  implying that the furnishing of wound dressings by Vohra Physicians is somehow superior to or different than using the services of a "DMEPOS supplier";

g.  directing, suggesting, or endorsing Vohra Physicians' making false and misleading statements in Patients' medical records that ordering prescribed wound dressings through "any DME[POS] supplier" (such as WCC) is not

- 40 -

"medically necessary"; and

    h.   making false statements to certain Facilities that WCC has lost its enrollment status.

171.    As a direct and proximate result of Defendants' concerted action and conspiracy, Facilities and Patients have terminated their business relationships with WCC, including, but not limited to, terminating contracts with WCC.

172.    Vohra's interference is neither justified nor privileged.

173.    As a direct and proximate result of Vohra's concerted and unjustified interference with WCC's business relationships, WCC has suffered substantial monetary and non-monetary harm, including actual damages from lost business, damage to its reputation, and loss of goodwill.  WCC is entitled to all remedies available under the law, as set forth in its Prayer for Relief below.

## PRAYER FOR RELIEF

Wherefore, Plaintiff WCC prays for judgment against VHSPA, VWPM, FPA, VPA of TX, VPA of East, VPA of NE, VWP of CA, VWP of FL, VWP of IL, VWP of NY, and VWP of West as follows:

    (a) A permanent injunction prohibiting Defendants, and its employees, independent contractors, representatives, or agents, from making material misrepresentations and omissions of material facts, for example, intentionally omitting the identity of the Vohra wound dressing supplier, falsely stating in medical records that ordering wound dressings through any DMEPOS supplier is not "medically necessary," and informing Facilities that they "must" use the Dressing Dispensing Program to have access to Vohra Physician wound consultation services;

    (b) Actual damages in an amount according to proof at trial, including, but not

- 41 -

limited to, WCC's lost business and Defendants' ill-gotten and unjustly derived revenues;

(c)  An accounting by Defendants of all payments received from its Program and the services Vohra renders thereunder;

(d)  Corrective advertising, as permitted by statute;

(e)  Disgorgement of all of Defendants' ill-gotten gains, as permitted by statute;

(f)  Statutory damages, including multipliers and equitable enhancements, as permitted by statute;

(g)  Reasonable attorneys' fees and costs, as permitted by statute;

(h)  Pre-judgment and post-judgment interest on monetary damages, as permitted by statute; and

(i)  Any other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury for all issues so triable.

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

Marisa R. Dorough
Kristine L. Roberts *(via Special Admission)*
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2000
Facsimile: (901) 577-4202
Email: klroberts@bakerdonelson.com

Stephen M. Azia (*via Special Admission*)
901 K Street, N.W., Suite 900
Washington, DC 20001
Telephone: (202) 508-3400
Facsimile: (202) 220-2239
Email: sazia@bakerdonelson.com

- 42 -

Hal K. Litchford (Florida Bar No. 272485)
Email: hlitchford@bakerdonelson.com
Marisa Rosen Dorough (Florida Bar No. 73152)
Email: mdorough@bakerdonelson.com
SunTrust Center
200 South Orange Avenue
Post Office Box 1549
Orlando, Florida 32802
Telephone: (407) 422-6600
Facsimile: (407) 841-0325

*Attorneys for Wound Care Concepts, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel or parties of record on the Service List below.

<u>Marisa R. Dorough</u>
Marisa Rosen Dorough

## SERVICE LIST

### CASE NO.: 19-CV-62078-SMITH

Hal Kemp Litchford
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
200 South Orange Avenue
Suite 2900
P.O. Box 1549 (32802)
Orlando, FL 32801
hlitchford@bakerdonelson.com
Counsel for Plaintiff

Kristine L. Roberts
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
2000 First Tennessee Building
165 Madison Avenue
Memphis, TN 38103
klroberts@bakerdonelson.com
Counsel for Plaintiff

Stephen M. Azia
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
901 K Street, N.W., Suite 900
Washington, DC 20001
sazia@bakerdonelson.com
Counsel for Plaintiff

Marisa Rosen Dorough
Baker, Donelson, Bearman, Caldwell &
Berkowitz PC
200 South Orange Avenue
Suite 2900
P.O. Box 1549 (32802)
Orlando, FL 32801
mdorough@bakerdonelson.com
Counsel for Plaintiff

Joshua L. Spoont
josh@sodhispoont.com
Sodhi Spoont PLLC
3050 Biscayne Boulevard, Suite 904
Miami, Florida 33137
Counsel for Defendant

Eric M. Sodhi
eric@sodhispoont.com
Sodhi Spoont PLLC
3050 Biscayne Boulevard, Suite 904
Miami, Florida 33137
Counsel for Defendant

Kevin Gildea
kpgildea @darroweverett.com
Darrow Everett LLP
450 Seventh Avenue, Suite 1802
New York, NY 10123
(212) -335-2090
Counsel for Defendant

4821-5420-8178v10
2932891-000003 02/17/2020